Opinion delivered, June 8, 1887.

No. 5426.

ROLLA SHAW v. THE STATE.

1. THEFT FROM THE PERSON—INDICTMENT—EVIDENCE—VALUE.—The value of the property privately stolen from the person of another is not a constituent of that offense as defined in Articles 744 and 745 of the Penal Code, nor does it in any wise affect the punishment prescribed for it. Wherefore, in prosecutions for that offense, the value of the stolen property need neither be alleged in the indictment nor established by the proof. See the opinion for an elucidation of this ruling, and for an exposition of the distinctions in these respects between ordinary theft and theft from the person.

2. SAME—FRAUDULENT INTENT.—In a trial for privately stealing a gold ring from the finger of a lady, the defense claimed that the taking was an innocent mistake of the defendant, who mistook the said lady for another one upon whom he designed to perpetrate a joke. See the statement of the case and the opinion of the court for evidence *held* to refute this defense and to sustain the conviction.

APPEAL from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

Appellant was convicted of theft of a gold ring from the person of Della Fry, on November 30, 1886, and his punishment

was assessed at a term of three years in the penitentiary. The opinion of this court sets out, in substance, the charging clause of the indictment, and summarises the grounds upon which the appellant relied for a reversal of the conviction.

Miss Della Fry, for the State, testified that, on the night of November 30, 1886, she attended a dance at Mr. J. W. Wilson's, about three and a half miles east of Bonham, in Fannin county. While she and defendant were swinging corners he attempted to take a gold ring from the fore finger of her left hand, but she closed her hand and frustrated that attempt. Another figure being called, she and defendant were passing around right and left, when he caught her left fore finger and slipped the ring off so suddenly that she did not have time to resist. He took the ring without her consent. As soon as she got to her partner, Mr. Will Huddleston, she asked him to get her ring for her. The dance was stopped, a lamp brought, and her partner and Mr. Jones commenced looking on the floor for the ring. She told them they need not look on the floor, that the ring was not on the floor, but that some one had it; and while thus talking to them she looked directly at the defendant, who was standing on the corner to her right, and he turned his back to her, pulled his hat over his face, and commenced talking with his partner. He seemed to avoid witness the balance of the night, but she watched his face so that she would know him afterward. Mr. Huddleston asked witness to point out the man who had her ring, but she declined to do so, and told Mr. Huddleston that, rather than raise a difficulty at the party, the man might have the ring. She saw no more of her ring after that night, until she got it at the examining trial of the defendant, about the eleventh or twelfth of December, 1886. Defendant was standing within a few feet of witness when she was starting home, and she was positive he heard her talking about losing her ring, and that he also heard Mr. Jones jokingly call to Mr. Kinney to give witness her ring. Witness was telling Mrs. Wilson and others why she was going home so early,— that she did not wish to stay in a crowd where she was robbed.

Cross examined, the witness said the crowd was as orderly as is usual on such occasions, though there was some drinking. She thought little of defendant's first attempt to take the ring off her finger. She did not ask him for her ring, because she thought that, if he was a gentleman, he would return it to her without a request from her. He was a stranger to her, and

she did not know his name, and had never seen him but once or twice. She did not request any one to ask defendant for the ring, for she wanted no difficulty at the party, and apprehended he would raise one if asked for the ring. Witness's little brother was present, but she did not ask him to get her ring. She danced two sets after her ring was taken, and then returned home with her little brother, who had accompanied her to the party. They left the party, she thought, a little after nine o'clock. Witness told her father about the taking of the ring, the next day after it was taken, and, several days afterward, he went to town and made the complaint in this case. Witness got angry when she found that defendant would not return the ring to her, after he heard what she said about it.

Miss Minnie Jones, for the State, testified that she was at the dance at Mr. Wilson's on the night of November 30, 1886, and saw Miss Della Fry there. During the evening some one said that a ring had been lost, but witness did not learn by whom until she got home that night. The dance was stopped, a lamp obtained, and a search made for the ring, but witness could not say whether or not it was found. Defendant had previously been talking to her about a ring, and said he would give her one if she would talk to a certain young lady in his behalf. He said the ring was his sister's, but, as his sister would never know it, that would make no difference. Witness told him she would not talk to the young lady for him, and thought no more about the ring. Defendant said nothing to her about getting her ring, or about his thinking that he had got her ring.

Cross examined, the witness said that the defendant was drinking some, as also were several others. The crowd was "right lively," but not more rude or boisterous than is usual on such occasions. Witness left the party about eleven o'clock, and thought Miss Della Fry left about ten or half past ten.

Tom Jones and Hiram Short, testifying for the State, corroborated the material statements of Miss Della Fry, except those immediately relevant to the taking of the ring from her finger, about which they said nothing. Neither of them asked defendant for the ring, because they did not know he had it.

For the defense, Miss Henrietta Hightower testified that in November, 1886, the defendant was, and for some time had been, living and working at her father's house. Witness did not attend the dance at Mr. Wilson's, but the defendant, the next morning after the dance, delivered to her a finger ring, and told

her to take care of it for him—that it belonged to his girl, and he was afraid he would lose it. Witness kept the ring until the day of defendant's arrest, which was about the eleventh or twelfth of December, 1886. In the evening of the day of the arrest, witness's father asked her if she had a ring given to her by the defendant. Answering her father affirmatively, she got the ring and gave it to him, and had never seen it since.

Joshua Hightower, the father of the preceding witness, corroborated her testimony in all material respects, and added that after she delivered the ring to him he, in accordance with the defendant's request at the time of his arrest, gave the ring to Esquire Lyday.

E. H. Lyday, for the State, testified that he was a justice of the peace of Fannin county, and held an examining trial of the defendant about December 11, 1886. At that trial Mr. Hightower gave to witness a ring which the defendant said was the same ring he had given to Miss Hightower. After the trial the witness gave the ring to Miss Fry, who recognized and took it as her property. Witness then identified the evidence taken at the examining trial, which evidence is preceded by a voluntary statement made by the defendant after he was duly warned according to law.

The State then read to the jury the voluntary statement of the defendant, referred to by Esquire Lyday, as follows: "I got a ring when we were dancing at Mr. Wilson's on the night of the thirtieth day of November, 1886. I got the ring when we were swinging the corners or promenading. I thought at the time that I got it from Miss Minnie Jones."

*C. D. Grace* and *Taylor & Galloway*, filed an ingenious and able argument for appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

### ON REHEARING.

White, Presiding Judge. At a former day of the present term, we affirmed the judgment of the court below convicting this appellant of theft from the person, and assessing his penalty at three years in the penitentiary. His motion for a rehearing, which is supplemented by an able brief and argument of his counsel, presents three questions for adjudication, and upon

which it is insisted the judgment is erroneous and should be reversed. First, it is contended that the indictment is invalid because it does not allege the value of the property, or that the property had any value; secondly, that the evidence does not show the value of the property or establish for it any value whatsoever; and, third, that the evidence is insufficient and fails to show a fraudulent intent on the part of defendant in taking the property, but, on the contrary, shows an innocent intent and innocent mistake on his part.

As to the indictment, it charged, in substance, that appellant fraudulently and privately took from the possession and person of Della Fry, to wit, one certain gold finger ring, without her consent, and so suddenly as not to allow time to make resistance before the same was carried away, with intent to deprive Della Fry of the value of said ring, and to appropriate the same to his own use, etc. As defined in Articles 744 and 745 of the Penal Code, the offense is sufficiently charged in the indictment, and the indictment follows the approved forms and precedents. (See Willson's Crim. Forms, No. 472, p. 206.)

In the offense of privately stealing from the person of another, the value of the property has nothing to do with the ascertainment of the punishment, as is the case with ordinary theft of property, where the punishment, and also the fact as to whether it is a felony or a misdemeanor, are made to depend upon whether the value amounts to twenty dollars or is under that value. (Penal Code, arts. 735 and 736.) On the contrary, in theft from the person, no matter what may be the value of the stolen property, there is but one punishment, viz., confinement in the penitentiary not less than two nor more than seven years. (Penal Code, art. 744.)

It is only in cases where the character of the offense, and its punishment, are made dependent upon the value of the property stolen that it is necessary for the indictment to allege the value, and for the proof to establish it. (Bish. on Stat. Crimes, sec. 427; 1 Bish. Crim. Proc., secs. 541 and 567.) We have a statute which expressly provides that "theft of certain particular kinds of property, as of a horse, property wrecked" (etc.), have a punishment affixed differing from the general punishment of the crime of theft; whenever, therefore, the law provides a particular punishment for theft committed in regard to a special kind of property, "theft of such property is not included within the law affixing the general penalty to the offense," etc. (Penal Code,

art. 734.) Thus it will be seen that where the penalty is certainly affixed, either on account of the kind of property or the manner of the theft, *value* is a non-essential and forms no part of the offense. In all such cases it is neither essential to allege or prove the value, because value is not an ingredient of the crime. In ordinary theft the rule is that "the property must be such as has some specific value capable of being ascertained" (Penal Code, art. 725); and this value must be alleged and proven because the punishment is made to depend upon it.

As to the value of the "gold ring" alleged to have been stolen, we are of opinion it was neither necessary to allege nor prove the same, and consequently that both the indictment and the evidence as to this matter are sufficient. (Bish. Stat. Crimes, 2 ed., sec. 427; 1 Bish. Crim. Proc., secs, 541 and 567.)

As to evidence of a fraudulent intent on the part of defendant, it is urgently insisted by counsel that the testimony discloses that the defendant, when he took the ring from Miss Fry's finger, did so through a mistake, thinking he was taking it from the finger of Miss Minnie Jones, a friend of his, upon whom he intended perpetrating only a joke. Unfortunately for this theory, Miss Fry says the defendant had tried once before, during the dance that evening, to snatch the ring from her finger, and failed; and, furthermore, the evidence fails to show that Miss Minnie Jones was the possessor of a gold ring which she was wearing and disporting upon her finger on that occasion, and her own testimony contradicts this theory. Most assuredly the appellant, if his intentions were honorable, should have corrected the mistake, if mistake it was, when the matter was discussed and search was being made for the ring in his immediate presence and hearing, to say nothing of his subsequent conduct in failing to return it to the owner afterwards. We are of opinion that the evidence is amply sufficient to sustain the verdict and judgment.

The motion for rehearing is overruled.

*Motion overruled.*