## EFFIE SIMS v. THE STATE.

No. 1479.   Decided January 3, 1912.

**1.—Theft from Person—Indictment—Description—Money.**

Where, upon trial of theft from the person, the property was described in the indictment as one pocketbook containing one ten dollar bill and two five dollar bills, all of the aggregate value of twenty dollars good and lawful money of the United States of America, the same was sufficient.

**2.—Same—Sufficiency of the Evidence—Description of Property—Charge of Court—Current Money.**

Where, upon trial of theft from the person, the indictment charged the taking of one pocketbook containing one ten dollar bill and two five dollar bills, all of the aggregate value of twenty dollars good and lawful money of the United States of America, and the evidence showed that the pocketbook taken contained the money therein described as a ten dollar bill and two five dollar bills, the same was sufficient without showing that said bills were current money of the United States of America, and the failure to so charge the jury was not error.

**3.—Same—Statutes Construed—Property—Money—Description.**

See opinion for a construction of article 446, Code Criminal Procedure, as to the term property, money, etc., and a description thereof, and articles 859 and 866, Penal Code, with regard to theft.

Appeal from the Criminal District Court of Galveston.  Tried below before the Hon. Clay S. Briggs.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

T. C. Turnley and O. S. York, for appellant.—On question of insufficiency of the indictment for want of proper description of property, etc.: Snelling v. State, 57 Texas Crim. Rep., 416; Johnson v. State, 58 Texas Crim. Rep., 442; Early v. State, 56 Texas Crim. Rep., 61.

C. E. Lane, Assistant Attorney-General, for the State.—Cited cases in opinion.

PRENDERGAST, Judge.—On June 13, 1911, the grand jury of Galveston County indicted the appellant for the offense of theft from the person.  The formal part of the indictment is in the usual form to which there is no objection.  The charging part of the indictment charges that the appellant on or about May 3, 1911, in said county "did then and there unlawfully and fraudulently take from the possession and person of T. P. Lucas, without the consent of the said T. P. Lucas and so suddenly as not to allow time to make resistance, before said property was carried away, corporeal personal property belonging then and there to T. P. Lucas, to wit, one pocketbook containing one ten dollar bill and two five dollar bills, all of the aggregate value of twenty dollars good and lawful money of the United States of America, and with the intent then and there on the part of her, the said Effie Sims, to deprive the said T. P. Lucas of the value of the same and with the intent to appropriate the same to the use and benefit of her, the said Effie Sims." . The case was tried on July 3, 1911, the appellant convicted and her penalty fixed at two years in the penitentiary.

Two witnesses only testified on the trial; both for the State.  T. P. Lucas, the complaining witness, testified identifying positively the appellant as the party charged with the offense in this case as the person who committed it.  He further testified that on the night of May 3 or 4, 1911, in the city of Galveston, he was going along one of the streets towards Broadway on 22d; that near one of the city lights appellant accosted him, asking him if he had a dime.  He replied, in substance, that he did not.  She followed him a few steps and said: "Please give me a dime, I am hungry."  He then felt in his pocket for a loose dime but found none; thereupon with his left hand he took his pocketbook out of his pocket to give her a dime.  She was then standing right in front of him, and suddenly grabbed the pocketbook with its contents out of his hand and ran down an alley.  When he took his pocketbook out of his pocket he was looking

at the pocketbook when she suddenly grabbed it out of his hand and ran. He took after her and ran after her, holloing for her to stop, and that he would shoot her, but could not overtake her, and she did not stop. That about a week before that he had received a hurt, and after chasing her some distance he collapsed and could not overtake her. That appellant in running from him with the purse and its contents, and while he was chasing her, almost ran into Cassie Holmes, who was closing up, or about to enter her, Cassie Holmes', house. When this occurred and Cassie Holmes seeing the appellant fleeing from Lucas, holloed, and Lucas then stopped where Cassie Holmes was and had some conversation with her about the theft. He further testified: "That pocketbook was taken from my hand; it took her just a second to grab it out of my hand; it was quicker than I could think."

In further describing the property stolen, he testified: "As near as I can remember the contents of that pocketbook was to the amount of about $25, in two $5 bills, a $10 bill and about five dollars in specie. . . . By pocketbook I mean a small leather purse for carrying money in. In that pocketbook there were two $5 bills, a $10 bill and some change to the extent of $5. There was a $10 bill and two $5. The value of the pocketbook without the contents was 25 cents. I have never gotten any of this *money* back. I never saw the *money* after it was grabbed from me."

Cassie Holmes, the only other witness, testified that immediately preceding the appellant nearly running into her when fleeing from the prosecuting witness, who was after her, she had passed them (appellant and Lucas) standing near said light; that they were talking at that time. She fully corroborated Lucas as to the identity of appellant, his chasing her, the appellant nearly running into her, and Lucas stopping, and then telling her of the occurrence, she stating that he then said to her: "She asked me for something to eat, and when I got my pocketbook out to give her something she grabbed the whole damned thing." We have given in substance all of the testimony. The appellant did not testify on the trial.

The record shows that in the court below the appellant made a motion to quash the indictment on two grounds: First, because it had not followed the statute in that the word "privately" was not alleged in the indictment as the gist of the offense of theft from the person. The second ground was "because the indictment in attempting to set out the kind of money stolen does not state that the money was coin or legal tender by Act of Congress—or that a better description was to the grand jurors unknown, nor neither is the number or denominations of same given, nor stated that number of bills or denomination was to the grand jurors unknown." The record does not show that the court below acted on this motion, as there is no judgment of the lower court on the subject.

As shown by the copy of the charging part of the indictment above,

the property was described as "one pocketbook containing one ten dollar bill and two five dollar bills, all of the aggregate value of twenty dollars good and lawful money of the United States of America." As we understand this language, the property charged to have been stolen from the person of the prosecuting witness was "one pocketbook." The other language immediately following, "containing one ten dollar bill and two five dollar bills," merely states what the "pocketbook," which was stolen, contained. Not that she stole one ten dollar bill and two five dollar bills, for what follows is, "*all* of the aggregate value of twenty dollars good and lawful money of the United States of America," meaning that *all of the property,* the pocketbook and its contents, the ten dollar bill and the two five dollar bills, "aggregated the value of twenty dollars good and lawful money of the United States of America." That the good and lawful money refers to the value of all of the aggregate property, the pocketbook and the ten and two five dollar bills in it.

Code of Criminal Procedure, article 446, is: "When it becomes necessary to describe property of any kind in an indictment, a general description of the same by name, kind, quality, number and ownership, if known, shall be sufficient. If the property be real estate, its general locality in the county, and the name of the owner, occupant, or claimant thereof, shall be a sufficient description of the same."

Our statute on the subject of theft, defining property, is: "Article 866, Penal Code. The term 'property,' as used in relation to the crime of theft, includes money, bank bills, goods of every description commonly sold as merchandise, every kind of agricultural produce, clothing, any writing containing evidence of an existing debt, contract, liability, promise or ownership of property, real or personal, any receipts for money, discharge, release, acquittance and printed book or manuscript, and in general any and every article commonly known as and called personal property, and all writings of every description, provided such property possesses any ascertainable value."

And article 859, Penal Code, says: "The property must be such as has some specific value capable of being ascertained. It embraces every species of personal property capable of being taken."

This court, through Presiding Judge Davidson, in the case of Campbell v. State, 61 Texas Crim. Rep., 504, 135 S. W. Rep., 548, in discussing the sufficiency of the allegations, which we think is also applicable to the proof necessary to sustain them, has so well expressed the law, that we here quote his opinion: "This conviction was for theft from the person. Appellant made a motion to quash the indictment, because the description of the alleged stolen property is insufficient to put the defendant on notice of what he is charged with taking; that it does not describe the character of money, or that it passed current as money, and gives no further description, and it fails to charge what character or kind of knives were taken, and it gives no description or value of the ring. The indictment, in so far

as the motion to quash attacks it, is in the following language: 'Corporeal personal property then and there belonging to the said Tom Harrison, to wit, four dollars in money, two knives and one ring.'

"It is not necessary, in charging theft from the person, to allege the value. Theft from the person is different from the ordinary theft in this respect. Any theft from the person is a felony, by the terms of the statute, as is theft of a horse, cow or hog; the value not being a necessary element. It differs from the general statute of theft in this respect: Under the general statute the value is made the basis or criterion of punishment. Where it is under $50 it is a misdemeanor. Where it is over that amount it is a felony. Any theft from the person is a felony. Shaw v. State, 23 Texas Crim. App., 493, 5 S. W. Rep., 317; Bennett v. State, 16 Texas Crim. App., 236; Harris v. State, 17 Texas Crim. App., 132; Green v. State, 28 Texas Crim. App., 493, 13 S. W. Rep., 784. Under these authorities the second question may be as well answered, that the description is sufficient. Four dollars in money, two knives, and one ring constitute property. Certainly, $4 in money would necessarily have a value, whether it be money issued under the authority of the United States, or any other government. While coin or money of foreign governments would not be money in the United States, unless provided so by Acts of Congress, yet such money would have a value. It was held in Shaw v. State, supra, that the allegation of theft from the person of one certain gold finger-ring was sufficient description. The motion to quash is not well taken."

In the case of Bush v. State, supra, in discussing the sufficiency of the description of the stolen articles in that case, which was, "one money purse containing money," this court, through Judge Ramsey, said: "Some question is also made that the description of the money purse is insufficient, in that there is no detailed or accurate description of it as to color, size, weight or value. In view of the fact that theft of any article from the person is by law made a felony, and as the indictment does allege what was stolen, to wit, a money purse, we think there is no merit in this contention."

Again, Judge White, for this court, in Green v. State, 28 Texas Crim. App., 493, in discussing the sufficiency of the property described to have been stolen, said: "The property alleged to have been stolen is described as 'one five dollar bill in money, of the value of five dollars.' A motion was made in arrest of judgment upon the ground, mainly that the property was insufficiently described, if indeed it was described at all. It is insisted that it should have been described as 'bank bills' or 'paper currency money of the United States;' that simply to allege 'one five dollar bill in money' describes nothing. Our statute provides the rule with regard to the description of property whenever it becomes necessary to give in an indictment as follows, viz.: 'Whenever it becomes necessary to describe property of any kind in an indictment a general description of the

same by name, kind, quantity, number, and ownership, if known, shall be sufficient,' etc. Code Crim. Proc., art. 427. This article is a new provision added by the revisers to our Code of Criminal Procedure, and dispenses with the great particularity required prior thereto in the description of property, especially money. Willson's Crim. Stats., sec. 1256."

Again, this court, through Judge Henderson, in Johnson v. State, 42 Texas Crim. Rep., 103, held that one watch, one pair of shoes and one razor, giving the respective values of each, was a sufficient description of the stolen property, saying: "As to the watch, it is insisted that the pleader should have stated the kind of watch, whether gold or silver; and in this connection we are referred to Wade v. State, 35 Texas Crim. Rep., 170. That case has no application. That was a case where the pleader attempted to state Mexican money in the indictment as money, under article 456, which we held applied alone to money of the United States, and not to foreign coins, and we held in said case that foreign coins were to be treated as property, and described as such. In this case the watch, shoes and razor were all property, and, under all the authorities so far as we know, they were properly described. Dignowitty v. State, 17 Texas, 521; Green v. State, 28 Texas Crim. App., 493; Lockhart v. State, 32 Texas Crim. Rep., 149; and see 2 Bish. Crim. Proc., secs. 700, 702."

In our opinion the description "one pocketbook," containing, etc., was a perfectly good description, and there was no error in the court holding the indictment sufficient, if it did so.

The appellant, however, raises the further question by his motion for new trial that the evidence is insufficient to sustain the conviction, because there was no testimony stating that the bills or money taken was current money of the United States of America, or that it was issued by the United States government, or under its authority, and that the court erred in not charging the jury that in order to convict, the evidence must show that the money taken was current money of the United States. He cites us to the cases of Early v. State, 56 Texas Crim. Rep., 61; Snelling v. State, 57 Texas Crim. Rep., 416, and Johnson v. State, 58 Texas Crim. Rep., 442, as sustaining his contention.

In our opinion neither of these cases are in point. Presiding Judge Davidson delivered the opinion in each of them. In the Early case, it is stated: "The indictment charges appellant with taking one ten dollar bill and one five dollar bill, current money of the United States of America of the value of fifteen dollars." In that case, which was a robbery case, it will be seen that the indictment specifically charged that the "one ten dollar bill and one five dollar bill" was "current money of the United States of America." In the indictment in this case the property charged to have been stolen was "one pocketbook containing one ten dollar bill and two five dollar bills, *all* (the pocketbook and the bills) "of the aggregate

value of twenty dollars good and lawful money of the United States of America." In the Early case, as seen above, the charge was that the ten and five dollar bills "were current money of the United States." Here the charge is that *all* of the property—"one pocketbook containing one ten dollar bill and two five dollar bills"—was "of the aggregate value of twenty dollars good and lawful money of the United States of America"—quite a different and distinct thing. In the Early case it is further stated that "the evidence shows only that he (appellant) took a ten dollar bill and a five dollar bill. No witness undertakes to testify what character of money, *or that it was in fact money,* further than the expression five dollar bill and ten dollar bill. There is no word of evidence that indicates it was United States currency of any sort—greenbacks, National Bank bills, or treasury notes—but the evidence leaves it just as stated—a five dollar bill and a ten dollar bill." That case was not reversed on that account, but as stated in the opinion, "we call attention to this so that upon another trial such uncertainty may be avoided."

In the Snelling case, supra, it is stated: "The indictment charges appellant with having stolen a pocketbook and thirty-five dollars in money, said money being then and there good and lawful money of the . United States." Quite a different thing from what the indictment charges in this case. Then the opinion in the Snelling case shows further that the charge of the court authorized a conviction for the theft of the "pocketbook," when, as shown by the opinion, there was no evidence whatever in the record that any pocketbook was stolen from the complaining witness in that case. The opinion calls attention to the fact that the evidence does not sufficiently describe the ten dollar bill and two five dollar bills, but the case was reversed on other grounds.

In the Johnson case, supra, the opinion states: "The information charges appellant with the theft of one dollar, current money of the United States of the value of one dollar, the personal property of and belonging to Laura Hunter," etc. As stated above of each of the other cases, the allegation of the indictment in this case is quite different from the allegation in the Johnson case. Then in the opinion in the Johnson case, it is further stated: "The only evidence in regard to the description of the money is that Laura Hunter lost $4.35, which was in a little box on a table in her room. There was no attempt to prove the dollar to be current money of the United States." And then states that this was necessary and cites the Early and Snelling cases.

As stated above, the difference between the allegations in the indictment in this case and that in the three cases above distinguished is so marked that further comment is unnecessary.

Even if the words in the indictment "good and lawful money of the United States of America" should be held to apply to the one ten dollar bill and two five dollar bills, and not as we have held

above, still, in our opinion, the evidence sufficiently conformed to the allegations in the indictment and sufficiently proved them. In connection with this, we call especial attention to the fact that the appellant in the court below asked no charge on the subject, and did not except to the charge of the court as given at the time. He only raised the questions by motion for a new trial after the conviction.

It has many times been held, and may be stated to be the law of this State, that in this character of case an allegation that the stolen property was "money," is held to mean money of the United States. Kirk v. State, 35 Texas Crim. Rep., 224; Menear v. State, 30 Texas Crim. App., 476; Burries v. State, 36 Texas Crim. Rep., 13. And that the court will take judicial knowledge of the value of United States money. Gibson v. State, 100 S. W. Rep., 776; Sowles v. State, 52 Texas Crim. Rep., 17; Nelson v. State, 35 Texas Crim. Rep., 205, and Menear v. State, supra.

It is also the law of this State that when the allegation charges a theft of more than one thing, proof of the theft of either of the things clearly sustains a conviction. In other words, that there is no variance when a party is charged with stealing two things, that the proof establishes the theft of only one. Of course, this is where the theft of either of the particular things constitutes the offense. We are not discussing where the value of one or more of the things must constitute the offense. Harris v. State, 34 Texas Crim. Rep., 497, 31 S. W. Rep., 382; Pones v. State, 43 Texas Crim. Rep., 201; Terry v. State, 60 Texas Crim. Rep., 60, 136 S. W. Rep., 485.

This court, in discussing the sufficiency of the evidence in a robbery case, which is specially applicable in a case of this kind, through Judge Henderson in Colter v. State, 37 Texas Crim. Rep., 284, said: "We have examined the record in this connection, and believe that the evidence is sufficiently responsive to the allegation. The witness Cox stated that he had $67 when he reached Dallas, and stated about spending certain amounts, which left him about the sum claimed to have been taken from him. In speaking of the occurrence, and of what he was robbed, he said: 'They held me down, and turned my pockets wrong side out, and took all my money. I had the money in bills in my watch pocket. I had nothing but money on my person, except my watch and chain and a return ticket.' And again he says: 'I know I had this money in bills. I had it in my watch pocket.' Joe La Presto states: 'We got his money from him;' and he speaks of dividing the money between them, and that he got six dollars. We have a statute on the subject of description of money as pertaining to indictments for theft or embezzlement. See Code Crim. Proc., art. 456. And this article has been held to apply to money taken by robbery. See Thompson v. State, supra. In that case, following the authorities on the subject, 'money' is held to be 'legal tender money under the Acts of Congress of the

United States, whether the same is coin or currency.' When the witness Cox refers to the property taken from him as 'bills,' being money, we think this can not be construed to mean other than currency money of the United States of America. We held in Jackson v. State, 34 Texas Crim. Rep., 90, that the mere designation of property taken as 'bills' was not sufficiently certain, as there were various kinds of bills. That is not the case here. There is a distinct reference to the bills taken as money. They are called by the witnesses 'money,' and they can not be other than such currency bills of the United States of America, current as money under the Acts of Congress."

Again this court, through Judge White, in the case of Green v. State, supra, said: "A particular description of the property stolen is not necessary; if it be described specially by the name usually applied to it, that will be sufficient. Dignowitty v. State, 17 Texas, 521. A bank bill or currency bill, when spoken of as money, is usually called 'a bill' without adding the words 'bank bill' or 'United States currency bill.' When the words 'one five dollar bill in money' are used to designate it, we understand that a paper bill of the denomination and value of five dollars—a circulating medium which passes as money—is meant. In Bryant v. State, 16 Texas Court of Appeals, 144, the stolen property was described as 'one twenty dollar gold piece, of the value of twenty dollars, and one five dollar bill in money, of the value of five dollars,' etc. It was held, on motion in arrest of judgment in that case, that the description was sufficient under the provisions of article 732 of the Penal Code, which declares 'money' to be property when taken in connection with article 427 of the Code of Criminal Procedure."

We think the proof in this case as fully and completely meets the allegation of the indictment as was held met the allegations in the two cases last above cited and quoted from. The complaining witness in this case, in describing the two five dollar bills and one ten dollar bill expressly calls them money, and speaks of them as the money which was grabbed from him by the appellant. In our opinion there was no variance in the proof in this case from the allegations, and the proof sufficiently and fully proved the allegations under the law.

The court in this case gave a full, accurate and apt charge, strictly in accordance with the indictment and the evidence adduced. He stated, as a preliminary statement, correctly, what the indictment charged and that the defendant plead not guilty. He then defined theft from the person strictly and accurately in accordance with the statute. He also accurately and fully defined theft in general in accordance with the statute and also defined what was meant by fraudulent taking. In submitting the findings for the jury, he required them to believe from the evidence beyond a reasonable doubt that the appellant in said county and State on or about the time

charged in the  indictment "did fraudulently and unlawfully take from the person and possession of the said T. P. Lucas, without his consent, the personal property described in the indictment, so suddenly as not to allow time to make resistance before the property, if any, was carried away, if at all, with the intent to deprive the owner of the value of same and appropriate it to the use and benefit of her, the said defendant," then to find her guilty. And further charged "if you do not so believe, or you have a reasonable doubt thereof, then you will acquit the defendant." He then charged correctly that the jury would not consider, etc., her failure to testify. And in a further paragraph required them to believe beyond a reasonable doubt that she was the person who committed the offense, if any was committed, and if they had a reasonable doubt thereof to acquit her. He also correctly charged on the burden of proof, presumption of innocence and reasonable doubt, and that the jury were the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony.

The appellant's rights have, in every way, been guarded most accurately and fully. She has had a fair and impartial trial. The evidence, beyond doubt, shows her guilt and she, having been legally convicted in every respect, the judgment will be affirmed.

*Affirmed.*