BEN LANE v. STATE.

No. 2138.  Decided January 8, 1913.

### 1.—Theft—Venue—Charge of Court.

Where, upon appeal from a conviction of theft, the defendant asked a peremptory charge of acquittal, and the bill of exceptions did not give the evidence on the question of venue but referred to the statement of facts, the same could not be considered on appeal, and under Article 938, Code Criminal Procedure, there was no reversible error. Following Conger v. State, 63 Texas Crim. Rep., 312; besides, the venue was sufficiently proven.

### 2.—Same—Practice on Appeal—Venue.

Where the evidence shows no venue and a contest is made on that point as required by law, it is not decided that in every instance the want of evidence showing venue must be shown by a bill of exceptions.

### 3.—Same—Evidence—Fruits of Crime—Statutes Construed—Arrest.

Where the evidence showed that what was said and done between defendant and the officer resulted in the recovery of the stolen property, there was no error under Article 810, Code Criminal Procedure, although defendant was under arrest at the time.

### 4.—Same—Ownership—Husband and Wife.

Where, upon trial of theft, the ownership was alleged in the wife, and the property was community and in the actual possession of the wife at the time it was stolen, there was no error under Article 457, Code Criminal Procedure.

### 5.—Same—Want of Consent.

Where the alleged stolen property was community and the ownership alleged in the wife and want of consent shown on her part, there was no error.

### 6.—Same—Evidence—Declarations of Third Party.

Where, upon trial of theft, the declarations of a third party with reference to the taking of the property was admitted in evidence in connection with defendant's declarations as to the same at the same time, there was no error; nor was there error in admitting testimony as to the efforts which were made to find the property.

### 7.—Same—Indictment—Description of Money—Statutes Construed.

Where the allegation in the indictment as to the description of the alleged stolen money was sufficient under Articles 458 and 468, Code Criminal Procedure, there was no error. Following Sims v. State, 64 Texas Crim. Rep., 435.

### 8.—Same—Charge of Court—Value.

Where the uncontroverted evidence showed that the money alleged to have been stolen was over the value of fifty dollars, a complaint that the court's charge assumed the value of the property to have been proven, there was no error, besides, the court's charge was not subject to such criticism.

### 9.—Same—Charge of Court—Fraudulent Intent.

Where the court's charge on fraudulent intent was in substantial accord with approved precedent, there was no error.

### 10.—Same—Charge of Court—Venue.

Where, upon trial of theft, the court's charge required the jury in order to convict defendant that he fraudulently took the property and converted it to his own use in the county of the prosecution, a complaint as to the court's charge on venue was not well taken.

Appeal from the District Court of Angelina. Tried before the Hon. James I. Perkins.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of the theft of property over the value of fifty dollars, and his punishment fixed at the lowest prescribed by law.

It is unnecessary to give but a brief statement of the evidence. About August 10, 1911, Mrs. Laura Best and her husband took the T. & N. O. Railroad train at a little station just south of the county line of Angelina County. This railroad extends from Beaumont to Dallas, running through Angelina County from the south practically towards the north, Angelina County being a long county north and south. Mrs. Best had with her in her hand-bag 19 twenty-dollar bills, 2 five-dollar bills, 1 two-dollar bill, 1 one-dollar bill, and 15 cents in coin. She and her husband with their two children went from Rockland, just south of the south line of Angelina County, to a station in Angelina County north on a north bound train on said railroad. She placed the hand-grip or satchel on the seat, and when they got out of the train forgot it and left it on the seat. She was going to visit her sister, who lived a short distance from the station where they got off, and as soon as she reached her sister's, shortly after she got off the train, she missed the money. Her husband went back at once, wired the conductor of the train, and took other means to recover the lost satchel or grip and the money. Very soon after she got on the train the appellant, who was the "Butch" or newsboy on the train, passed along where she had been sitting and his attention was called to the hand-bag by a lady passenger who sat on the seat just behind where Mrs. Best and her husband had been. He then took it, carried it back to his box where he kept his papers and articles of merchandise. He claims he did not immediately look into the hand-bag to see what was in it, but put it in his box. He said he knew that it was not his and he had no right to it, and that all such articles that are left on the train should be turned over to the conductor or train auditor; that he did not do this. He says he did not immediately look into the hand-grip to see what was in it, but soon did so, and that when he did so he found the $393.15 in it. That he took the money out of the hand-bag and put it in his pocket and threw the bag out of the window. He first testified that he did this before the train reached the town of Huntington, which is only about half way through the county on said railroad from the south to the north line thereof. He afterwards attempted to show that he did not know when or where the train was when he did

this, but that it was further north, and perhaps not in Angelina County. When the train got to Nacogdoches, which is the county seat of the next county north of Angelina County, the conductor got a telegram inquiring for this grip. The telegram, as he understood, meant an ordinary black grip such as are carried usually by travelers with articles of clothing therein, and that he did not at the time think it meant a lady's hand-bag, satchel or grip such as is usually carried by ladies. That as soon as he got the telegram and the train started out of Nacogdoches north he went entirely through the train hunting and inquiring and examining for such an article. That the appellant knew that he was looking for that article left by said lady; that the appellant then had the money in his pocket, but did not then tell the conductor about it, or of his having found and taken charge of the said lady's grip and its contents. The conductor inquired of him about it, and searched in and about his box for it, but could not find it. Of course he did not, as the appellant then had the money in his pocket, and had thrown the grip out of the window. That from time to time afterwards the conductor went through the train inquiring for this hand-bag, when the appellant himself would inquire of the conductor whether or not he had got "any more dope on that." The appellant repeatedly asked the conductor this after the conductor began to hunt for said grip or hand-bag, but at no time did appellant tell him that he had it or had gotten it, but when the conductor searched his box and under the seat about his box, he denied having it.

It seems the sheriff of Angelina County wired the police or sheriff's department at Dallas to arrest appellant for the theft of said money. The telegram did not reach Dallas in time for the officer to meet the train upon its arrival, but when he went to the station at Dallas that night the train had arrived, the passengers had dispersed and appellant had left the depot, and he could find out nothing about it that night. The next morning, shortly before a train on this same road was to go south from Dallas back to Beaumont, the sheriff went to the news agent's department and met appellant in the room. He did not know him. He asked appellant for the news agent. Appellant pointed him out. Upon inquiry of the news agent for appellant, the news agent pointed out appellant there in the room, all three being present at the time. The sheriff told appellant that he had a telegram stating the amount of money that was in said hand-bag or grip, and to arrest him if he did not give up the money, but that if he would deliver the money, not to arrest him. The appellant denied having the money or knowing anything about it, but showed to the sheriff a telegram to himself to the effect that if he would return the money he would be rewarded therefor, and he said to the sheriff, "If I had the money I would return it for the reward," and not only refused to give up the money, but denied having it, or any knowledge of it. The sheriff arrested him and took him off to the courthouse about a half mile distant. The sheriff kept accusing him of having the money, and telling him if he

would give it up he would turn him loose under his instructions. Appellant still denied having the money or knowing anything about it, but said that in order to be protected if he would let him see his mother she would put up the money for him in order to keep him from being arrested and prosecuted. The officer told him no, if he did not have the money his mother nor any one else could put it up for him, and told him he would have to take him to jail. Upon starting from the courthouse to the jail with him, appellant then told him if he would go back to the depot with him he would get and deliver the money to him. The sheriff went back with him; appellant went in behind some place in the news room, reached back in some place where he had the money hid or concealed and delivered it to the sheriff. The money so delivered by him at the time to the sheriff was the 19 twenty-dollar bills and 2 ten-dollar bills. The sheriff told him and showed him the telegram that that was more money than Mrs. Best had. The appellant told the sheriff he had taken out the small money and put in two ten-dollar bills instead, and the sheriff turned over one of the ten-dollar bills to him and had him get the change, and appellant turned over to the sheriff the exact amount of money, and kept the balance of the change himself. Appellant testified that he had the two-dollar bill and the one-dollar bill in his pocket at the time, but did not deliver or turn that particular money over to the sheriff.

It seems that appellant's main contention is that the evidence fails to show the venue of the theft in Angelina County, and he asked a peremptory charge of acquittal, which was refused. The charge does not state that it was on that ground, but appellant contends that that is the reason for asking said peremptory charge. Our statute, Article 938, Code Criminal Procedure, says: "In all cases the (appellate) court shall presume that the venue was proven in the court below * * * unless made an issue in the court below, and it affirmatively appears to the contrary by bill of exceptions properly signed and allowed by the judge of the court below * * * and incorporated in the transcript as required by law." No such bill is contained in the record. Appellant did take a bill to the court's refusal to give a peremptory instruction to acquit him. In his bill to the refusal of the court to give his peremptory instruction he states that he excepted to the action of the court in refusing his said peremptory charge, because the State at that time had wholly failed to prove venue in the case, and wholly failed to show that appellant had formed the intent to appropriate the hand-bag or satchel or the money described in the indictment in Angelina County. The court, in approving the bill, said: "Allowed in connection with statement of facts and as therein qualified and explained." The bill nowhere attempts to give the evidence on this subject, and we cannot properly consider the question of venue when only thus raised. Neither are we required to go to the statement of facts to ourselves hunt out and see if there was such proof, when the appellant in his bill does not do so, and the court refers us to the

statement of facts for that purpose. This bill is wholly defective on that account, and we are not required to pass upon the question. This court has repeatedly so held. Burt v. State, 38 Texas Crim. Rep., 397. As stated by us in Conger v. State, 63 Texas Crim. Rep., 312, in speaking of such a defective bill, ''The judge, in allowing this bill, qualified it by stating this: 'With the request that the statement of facts be referred to in connection with this bill.' This but illustrates the necessity for the bill of and within itself containing all that is necessary for this court to determine the question. The work of this court would be interminable if, in order to see whether the questions raised were or were not admissible, it had to undertake to hunt them out in a record containing,—a statement of facts alone,—of 130 pages.'' However, we have gone over and read the statement of facts fully, and while it contains 28 pages of closely typewritten matter, we have found ample evidence which would establish or authorize the jury to find that the venue was proven, and that appellant stole the money in Angelina County. We have given the substance of some of it in the statement of the case above. The court committed no error in refusing to give appellant's peremptory charge on said ground claimed by him or any other.

We do not intend to hold that where the evidence shows no venue, when contested on that point clearly in the court below, that in every instance the want of evidence would have to be shown by a bill.

By one of his bills appellant claims that the court erred in permitting the sheriff of Dallas County to testify to what occurred, and what was said by him to appellant and appellant to him about the money at Dallas, because appellant was then under arrest. It is true, appellant was then under arrest, but it is also clear and true that what was said and done between the parties at the time resulted in the recovery of the stolen property. Our statute, Article 810, Code Criminal Procedure, expressly provides that the confession of appellant, although under arrest and not in writing, when appellant thereby makes statements of fact or circumstances that are found to be true, which conduce to establish his guilt, such as finding of secreted or stolen property, etc., are admissible. This confession of the appellant was clearly authorized and not prohibited under our statute.

Another point is made by appellant to the effect that the stolen property belonged to the husband, A. J. Best, and not to Mrs. Best, his wife, as charged in the indictment. The proof on this point clearly shows that the stolen money was community property of the said husband and wife, but it also clearly shows that the husband had turned it over to his wife and put it in her custody, and that she so had it for their benefit. Under our law community property belongs to both the husband and the wife, and Article 457, Code Criminal Procedure, expressly provides: ''Where one person owns the property, and another person has the possessioin, charge, or control of the same, the ownership thereof may be alleged to be in etiher. Where property is

owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them." In this case it was proper to have alleged the ownership of the property in either the husband or the wife, but as she had possession, charge and control of the same at the time, there is no variance between the proof and the allegations in any respect.

And there was no error of the court in permitting Mrs. Best to testify that appellant took the said money, and hand-bag containing it, without her consent, as objected to by one of appellant's bills.

Neither did the court err in permitting the conductor to testify that while he was looking for the grip or hand-bag, after getting the telegram, that one of the lady passengers on the train told him that there was a lady who got off and left her hand-bag, when the defendant "butted in" and said, "Yes, I saw it lying there." Appellant's objection to this testimony seems to be to what the lady told the conductor, claiming that it was a statement made by a passenger not in his presence. This testimony objected to on its face shows that it was in appellant's presence and hearing, and that he "butted in" and replied thereto and stated that such was the fact himself. This bill seems to embrace in a very general way complaints of the conductor testifying to what he did in having received a telegram and in response hunting through the train for the lady's hand-bag or grip. The court in allowing the bill says he allows it so far as it is specific, but not as to generalities. It does not show any reversible error whatever in any contingency.

There is nothing in appellant's contention that the indictment is defective in that it fails to sufficiently describe the money stolen. It is described in the indictment as "nineteen twenty-dollar bills, the same then and there being United States paper currency money, each of the value of twenty dollars, two five-dollar bills, United States paper currency money, each of the value of five dollars, one two-dollar bill, United States paper currency money of the value of two dollars, one dollar bill, United States paper currency money of the value of one dollar, and fifteen cents in silver coin of the United States of the value of fifteen cents, the whole aggregating in the value of three hundred and ninety-three dollars and fifteen cents." This allegation was clearly sufficient under our statutes, articles 468 and 458, Code Criminal Procedure, and the decisions noted thereunder. See also Sims v. State, 64 Texas Crim. Rep., 435; 142 S. W. Rep., 572, and cases there cited.

There is no error in the court's charge to the effect, in submitting the case to the jury, that if they believe from the evidence beyond a reasonable doubt that appellant fraudulently took the property described in the indictment from the possession of Laura Best, and it was of the value of fifty dollars or more, his complaint being that this authorized the jury to find the defendant guilty for the taking of any amount, whether the same be more or less than fifty dollars in value, and that it was a charge upon the weight of the testimony.

There would be no error in this anyway, because the uncontroverted proof shows that the money stolen by appellant was $393.15.

The charge of the court on fraudulent intent, and meaning thereof, and applying it to the appellant for unlawfully taking the said money, is substantially in accordance with such charges as have been uniformly approved by this court.

There was no error in that paragraph of the court's charge where he tells the jury, "If the defendant took the hand-bag in Angelina County and at the time of the original taking formed the intent fraudulently to take its contents, if found to be of value, and afterwards, upon finding the hand-bag contained money, he took the money with the intent to deprive the owner of its value and to appropriate it to his own use or benefit, then, in such case, the fraudulent taking of the money would relate back in point of time and place to the original taking and would be a fraudulent taking in Angelina County, and it would in such case be immaterial where or what county he was when he discovered that the hand-bag contained money and actually appropriated it, if he did appropriate it," as against the objections that such charge was unwarranted, and that no venue was shown by the evidence, and that the evidence did not show that the contents of the satchel or hand-bag were known to appellant while in Angelina County. The court in his charge repeatedly required the jury to find that appellant fraudulently took the property and converted it to his own use in Angelina County, and if they did not so find that he did in Angelina County, to acquit him.

We have carefully considered the record in this case and all points raised by appellant, and find no error that would justify this court to reverse the case. The judgment is therefore affirmed.

*Affirmed.*