FRED ROACH v. STATE.

No. A-7025.    Opinion Filed Jan. 31, 1930.
(287 Pac. 1095.)

Jess L. Ballard and Richard L. Wheatley, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Craig county on a charge of robbery with firearms, and his punishment fixed at imprisonment in the state penitentiary for a term of eighteen years.

The defendant was jointly charged with one Claud Ballard and with two unknown men, designated in the information as John Doe and Richard Roe, with the robbery of the Bluejacket State Bank, on August 19, 1927. The defendant demanded a severance which was granted, and upon a verdict of guilty he prosecutes his appeal to this court. The evidence against the defendant is altogether circumstantial.

The circumstances tending to connect the defendant with this crime are substantially as follows: On the 16th day of August, 1927, the defendant was seen in the town of Bluejacket driving a blue Dodge sedan, in which there were, at that time riding with him, Claud Ballard, and a third man, who was a stranger in Bluejacket, and who approximated the description given of the taller of the

two men who robbed the bank. These three men were seen together in defendant's automobile at a filling station directly opposite the bank, and especial attention was attracted to the third man, because he continued for five or ten minutes during the time they were stopped at the filling station to gaze intently at and into the bank and its surroundings.

The defendant lived in the town of Commerce. The testimony is that for some time prior to this robbery there had been an old Ford touring car located at the defendant's premises, which car bore an Indiana license tag. This car disappeared a few days before the bank robbery. The defendant owned a Dodge sedan with an Oklahoma license tag on it, which bore the number of the Dodge sedan seen in Bluejacket on August 16, 1927.

On the day the bank was robbed, the defendant was seen about four miles east of the Skeets' place driving west in the direction of said place, and afterwards the Dodge sedan of the defendant was seen parked in front of the Skeets' place two miles east of Bluejacket, and at about the time the robbery occurred the defendant himself was seen out of the car, looking down the road in a south direction. After robbing the bank the robbers came up this road, abandoned the Ford at the Skeets' place, and were taken away by somebody in another kind of an automobile.

About 11 o'clock on the morning of the bank robbery the defendant was seen driving his car in an easterly direction at the town of Narcissa, several miles east of the Skeets' place, and at that time he had some other people in the car with him. Claud Ballard, one of the codefendants, and this defendant were intimate acquaintances. Ballard lived in Bluejacket. On the day before the rob-

bery Ballard was also seen at the Skeets' place, and there were with him at that time two men in a dilapidated Ford touring car, and these men and Ballard were engaged in close conversation.

Defendant was arrested on August 22, 1927, at his home in Commerce which is north and east of the town of Bluejacket, and in going from Bluejacket to defendant's home a person would travel by automobile on the road leading east from Bluejacket to Narcissa and from there northeast to the city of Miami and then to Commerce. At the time defendant was arrested Claud Ballard was also arrested at defendant's house. At the time of the arrest the defendant's Dodge sedan was seen in his garage at Commerce. About three or four hours afterward the officers went back to find the car, but it had disappeared, and was not seen or heard of up to the day of the trial.

When the robbers made their escape from the bank on the road where they turned south, a mile west of Bluejacket they lost one of the casings from the left rear wheel of the automobile and continued to drive the Ford on the rim of the wheel to the Skeets' place. A dilapidated Ford car identified as the one used by the robbers was found at the Skeets' place with the rear tire missing from the left wheel. This Ford touring car was identified as being similar to the old Ford touring car seen at defendant's place some days prior to the robbery, and was found concealed in the weeds on the Skeets' place shortly after the robbery.

The defendant did not take the witness stand and made no effort to explain any of these incriminating circumstances or deny his presence at any of the places where the state's witnesses located him. Defendant's neighbors at the town of Commerce testified that the defendant left

left home in Commerce a few days before the robbery and did not return thereto until after the robbery. Defendant made no attempt to deny his absence from home or explain his presence at any of the places testified to by state's witnesses.

The defendant undertook to establish an alibi, but called only one witness, Arthur Allen, for such purpose, who testified on direct examination that defendant's Dodge car on the day of the robbery was in the "Dinty Moore Auto Laundry" from 10 o'clock in the morning until about 12:30 o'clock that afternoon; that the defendant brought the car there, came back and got it, and paid $2 for having it washed. On cross-examination the witness testified that he was not positive as to the date defendant took the car there, that it might have been the day after the robbery or the day before the robbery, but that it could not have been more than one day either way. This was the only attempt made by the defendant to explain his whereabouts with his car on the day of the robbery. Since he made such an attempt to account for his whereabouts and failed and called no other witness and made no attempt to explain his whereabouts or account for his presence at the Skeets' place at the time of the robbery, all these circumstances tend to strengthen the state's case as to the guilt of the defendant.

Not all the facts and circumstances are set out in this statement, but all the facts and circumstances in the record taken together are sufficient to establish the fact that the defendant aided and abetted in planning this bank robbery and assisted the actual robbers in making their get-away.

The defendant first contends that the court erred in overruling his demurrer to the information. The information charges the defendant, together with other men, of

robbing one Clayton Spradlin, the cashier of the Blue-jacket State Bank, of $458 in money, both coin and currency. The objection urged against this information is that it is defective and insufficient in failing to charge that the money taken was lawful money of the United States, and, also, in failing to set out the kind of money charged to have been taken and the value of the same.

In the case of Jenkins v. State, 44 Okla. Cr. 217, 280 Pac. 477, 478, this court said, in the body of the opinion:

"The first contention is that the information is insufficient in failing to particularly describe the money taken in the robbery and in failing to allege the value of it. The information described the property taken as '$200 in ten and twenty dollar bills.' This is a sufficient allegation on this point. Where an information charges that money is taken either by larceny or robbery, it is properly construed to mean money of the United States, and the court will take judicial knowledge of its value." Section 2571, Comp. Stat. 1921; Price v. State, 9 Okla. Cr. 359, 131 Pac. 1102; Hill v. State, 19 Okla. Cr. 406, 200 Pac. 253; Sims v. State, 64 Tex. Cr. R. 435, 142 S. W. 572.

The defendant next contends that the verdict of the jury is not supported by the evidence and is wholly contrary to the evidence and contrary to law. Under this general assignment of error it is contended that the evidence, being wholly circumstantial, is not sufficient to exclude every reasonable hypothesis, except that of the guilt of the defendant. Where the evidence to prove guilt of the accused is circumstantial and the circumstances are consistent with guilt and inconsistent with any reasonable conclusion of innocence, they are sufficient. Penrod v. State, 38 Okla. Cr. 46, 258 Pac. 1052; Halbert v. State, 35 Okla. Cr. 329, 250 Pac. 436.

In this case the state proved the guilt of the defendant to the satisfaction of the jury by a chain of circumstances

that were entirely inconsistent with his innocence and could not be explained on any theory, except that of guilt. The defendant's failure to make any personal attempt to explain any of these incriminating circumstances, and the alibi he attempted to establish by another witness being such a failure, convinces the court that the defendant could not explain his whereabouts on the occasion of this robbery by any truthful witness who would swear positively that he was at any different place than at those places where the state's witnesses placed him, and, if he was at those places for the purposes that this record discloses, the evidence was sufficient to support the verdict of the jury. Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277.

The defendant next complains of "improper conduct and prejudicial argument on the part of the county attorney." Counsel for the defendant objected to a statement he claimed the county attorney made in his closing argument to the jury, whereupon the following proceedings were had:

"The Court: Now, repeat your statement if you can, Mr. Roper.

"Mr. Roper: All right. I said: 'Counsel for the defendant in his argument brought out a comparison between the preacher and W. T. Ketchum, the under-sheriff, and this defendant. The difference is this: That W. T. Ketchum has a business or occupation in Craig county, Oklahoma. This preacher has one too. In the light of this evidence, we don't know the occupation of this defendant.'

"Mr. Roper: Is that all right for that statement in the record?

"Mr. Ballard: You stated there that the preacher had the 'reputation'—

"Mr. Roper: I beg your pardon; I didn't say 'reputation.' The 'occupation,' I said.

"The Court: I think it was 'occupation.'

"Mr. Ballard: I want to save the record on that statement, your Honor, and save our exceptions.

"The Court: All right. Objection overruled."

Counsel for defendant continued his objections whereupon the following proceedings were held:

"The Court: Is there any statement that you would like to make, Mr. County Attorney?

"Mr. Roper: The county attorney did not say anything about 'honorable reputation' at all.

"The Court: That is my opinion. The objection will be overruled.

"Mr. Ballard: Note an exception.

"Mr. Roper: It was an answer to a comparison made by counsel for the defense.

"The Court: I believe that the county attorney was probably within the realm of his discretion, inasmuch as a previous comparison had been made, and he was merely answering the comparison. Under those circumstances, the objection will be overruled; to which the defendant may have an exception.

"Mr. Ballard: We except."

Where the argument of the attorney is not taken down in shorthand and embodied in the record, and where there is a dispute as to what was said or what occurred, this court is bound by the findings of the trial court recited in the record as to what occurred. Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676; Murrell v. State, 34 Okla. Cr. 413, 246 Pac. 644; Whitenack v. State, 46 Okla. Cr. ......, 285 Pac. 990.

Finally it is contended that the trial court erred in its instructions to the jury and erred in refusing to give defendant's special and requested instructions. It is not error for the trial court to refuse to give a requested instruction, although it may be a correct statement of the law, if the principles therein contained have already been given in the general instructions. Smith v. State, 18 Okla. Cr. 519, 196 Pac. 734; Hamilton v. State, 38 Okla. Cr. 62, 259 Pac. 168; Wheat v. State, 38 Okla. Cr. 119, 259 Pac. 279.

Defendant requested two instructions; the first advising the jury to acquit the defendant. This instruction was properly refused, because there was evidence in the record sufficient to authorize the jury to find the defendant guilty. It was clearly the province of the jury to pass upon the weight of this evidence and the credibility of the witnesses, and it would have been an invasion of the jury's rights in this instance for the trial court to have given an instruction to acquit the defendant in this case. The second instruction requested was on circumstantial evidence. The trial court had already, in Nos. 7 and 8, given correct instructions on circumstantial evidence. These instructions have heretofore been approved by this court as clearly stating the law. Carter v. State, 6 Okla. Cr. 232, 118 Pac. 264.

It was not error, therefore, for the trial court to refuse the requested instructions of the defendant.

A careful reading of the evidence in the case convinces us that the defendant aided and assisted in the robbery of the bank as charged in the information. For the reasons stated the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.