## M. H. DAVIS v. STATE.

### No. 1730.   Decided November 20, 1912.

**1.—Gaming—Knowingly Permitting Gaming—Control of House.**

Where defendant was charged with unlawfully and knowingly permitting property to be used as a place for people to resort, to bet and wager upon certain games played with dice and cards, and the evidence showed that while the house was the residence of another party, that defendant, an unmarried man, was staying at said house during the absence of said owner, and permitted it to become a resort for the purposes of gambling, the conviction was sustained.

**2.—Same—Indictment—Negative Allegations—Private Residence.**

Where, upon trial of unlawfully permitting gaming in a house under defendant's control, the evidence showed that it was not a private residence occupied by a family at the time the gaming took place, it was not necessary to negative in the indictment that the house was a private residence, or allege that it was a private residence commonly resorted to for gambling.

**3.—Same—Requested Charge—Permitting Gaming.**

Where it was shown that on more than one occasion the defendant engaged in gambling with others at a house under his control, this in law would be construed to be permission for these others to gamble there, and there was no error in refusing a special charge to the contrary.

**4.—Same—Requested Charge.**

Where there was no evidence upon which the requested charges could be based, there was no error in refusing them.

**5.—Same—Charge of Court—Consent.**

Where there was evidence that defendant engaged in games with others at a house under his control, the mere fact that just before the grand jury met the defendant requested these parties to stop gambling, would not show that the gambling on prior occasions was without his consent, and there was no error in refusing a special charge thereon.

**6.—Same—Reading Law to Court—Discretion of Court.**

Where the record showed that no law was read by State's counsel to the jury, but only to the court prior to the preparation of his charge, there was no error.

**7.—Same—Harmless Error—Evidence.**

Where, upon trial of unlawfully and knowingly permitting gambling in a house under defendant's control, testimony was admitted that witness had never known defendant to do any work, etc., the same was harmless error, the minimum punishment being assessed.

**8.—Same—Motion in Arrest of Judgment—Indictment.**

Upon trial of knowingly permitting a certain house under defendant's control to be used for gambling, it was not necessary under Article 559, Penal Code, to describe the premises in which the gaming took place, nor that the same was used for retailing liquors, etc.

Appeal from the District Court of Comanche.   Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of unlawfully and knowingly permitting property under the defendant's control to be used for gambling; penalty, two years imprisonment in the penitentiary

The opinion states the case.

*Smith & Palmer,* for appellant.—Cited Moore v. State, 62 Texas Crim. Rep., 326, 137 S. W. Rep., 690; Goodwin v. State, 65 Texas Crim. Rep., 98, 143 S. W. Rep., 939; Chapman v. State, 63 Texas Crim. Rep., 494, 140 S. W. Rep., 441; George v. State, 65 Texas Crim. Rep., 91, 143 S. W. Rep., 621; Eylar v. State, 39 S. W. Rep., 665; Purvis v. State, 62 Texas Crim. Rep., 302, 137 S. W. Rep., 701.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under an indictment containing several counts, and convicted under the fifth count in which he was charged with unlawfully and knowingly permitting property which was under his control, a house situate in Comanche, to be used as a place for people to resort to bet and wager upon certain games played with dice and cards.

G. W. Fitch testified that his family consisted of himself and wife, and that defendant had been staying with him. That he and his wife took a trip to East Texas, and were absent some thirteen or fourteen days. That appellant continued to stay at his residence while he was absent. No one else stayed there except appellant while Mr. Fitch and his wife were absent. This would show that appellant was in control of the premises during that time, and the facts show that he was an unmarried man. During that time a number of witnesses testified that they went to this house and gambled there on several occasions, some saying they played poker and others testified they threw dice. It is also shown that appellant played in part of the games and gambled with the others. Leslie Stewart testifies he played at this house during the absence of Mr. Fitch Thursday and Friday nights, and that six others were there and engaged in the games.

John Rhoads testifies he was there on occasions while Mr. Fitch was absent when gambling took place twice in the daytime and three times at night, engaging in gambling both with cards and dice. That he had gone to this place with appellant on one occasion, and on other occasions went with others. Frank Keeter testified he went to this house and gambled. That appellant was not there when he got there the first night, but came shortly afterwards. That on the second occasion appellant gambled with him and others. That on another occasion appellant and he gambled alone at the house, no one else being present. Joe Hulsey testified he had gambled at this house on two occasions, shooting craps on one occasion and playing cards on the other.

This testimony we think sufficiently shows that appellant permitted a house under his control to be used as a resort for gambling. He knew the gambling was taking place, engaged in the games a portion of the time, and it is shown that while Mr. Fitch and his wife were absent, that on at least five occasions the witnesses gathered

there and gambled with his knowledge. The boys say they just "went there," knowing that they could gamble there. When a person opens a house under his control and permits people to gather there and gamble without invitation (for he testifies he invited none of them) it becomes in law what is termed a common resort for gambling. The fact that it was the residence of Mr. Fitch does not alter the fact that as soon as Mr. Fitch left he permitted it to become a resort for the boys to gather and gamble, and the testimony would support the verdict.

There was no error in the court refusing to quash the indictment on the ground that it did not negative the fact that it was a private residence, or allege that it was a private residence commonly resorted to for gambling. For the time being it was not a private residence occupied by a family, but appellant, an unmarried man, was staying there by permission, at least  It would be immaterial whether he was in possession by permission, or had taken possession during Mr. Fitch's absence, believing that it would be agreeable with the owner. If one should in any manner, while the family was absent, take possession of a house and permit gambling to be engaged in by all those who came to the house while he was in control of the house, and when it was shown that on five occasions during this time he permitted gambling to be carried on in the house, it would be an offense against the law.

The court did not err in refusing the special charge requested by defendant, as it is shown that on more than one occasion he engaged in gambling with the others, and this in law would be construed to be permission for the others to gamble.

There was no evidence upon which to base the second charge requested by defendant, and it is never improper to refuse a charge not called for by the evidence. Neither was there any evidence suggesting that the persons who gambled "were guests at the defendant's house engaged in gaming for pleasure," consequently the court did not err in refusing the special charge presenting this issue.

Special charges Nos. 4 and 5 were covered by the main charge of the court insofar as they presented the law of the case. The fact that one night just before the grand jury met, the appellant requested them to stop gambling on that occasion, would not present the issue that the gambling took place without his consent, when it is shown that he engaged in the games with the others on all prior occasions.

The question of whether or not the State's counsel shall be permitted to read cases and discuss the law to the court, is one within the sound discretion of the court. The qualification of the bill shows that no authorities were read to the jury, but all were read to the court prior to the preparation of his charge. As thus qualified the bill presents no error.

The defendant complains that a witness was permitted to testify that he had never known defendant to do any work, and had seen

him in the pool hall a number of times. This testimony was inadmissible, but inasmuch as the jury only gave appellant the minimum punishment fixed by law to this offense, it does not present such error as should cause a reversal of the case.

The grounds of the motion in arrest of judgment should not have been sustained. Under Article 559 of the Penal Code it was not necessary to describe the premises in which it was alleged the gaming took place further than to say it was a house under his control. It was not necessary to allege that it was a house for retailing spirituous liquor, or other public place, under the article of the code under which this prosecution was brought. The indictment alleges that "on or about the 13th day of October, 1911, in the County of Comanche and State of Texas, appellant did then and there unlawfully and knowingly permit property which was under his control, to-wit: a house situate in Comanche, to be used as a place for people to resort to bet and wager upon certain games played with cards and dice." This sufficiently alleged the date and that the offense was committed in Comanche County, and it was not necessary to name the games played with the dice and cards.

The judgment is affirmed.

*Affirmed.*