LESS STALLINGS v. THE STATE.

No. 3223. Decided October 21, 1914.

1.—Gaming—Private Residence—Family—Occupying Residence.

The statute makes it an offense to play a game of cards at any place or go into or remain at any place where such game is knowingly played, unless such game is played at a private residence and this is occupied at the time the game is played by a family. It is not the private residence that protects the gaming from being unlawful, but it is the fact that that residence is at the time occupied by a family, not that some family make it their residence, but for the time are away.

2.—Same—Case Stated—Private Residence—Absence of Family.

Where the evidence showed that the wife of a man in whose residence the game occurred had gone to her parents, and had been there about two weeks, and that her husband had followed her there, and neither of them nor any constituent of the family occupied their residence at the time of the game, the fact that the defendant had permission to play dominoes there while the family were not occupying their residence did not authorize them to gamble there with cards; and the length of time the family were not occupying the residence is not decisive.

Appeal from the County Court of Hall. Tried below before the Hon. Jno. D. Bird.

Appeal from a conviction of gaming and knowingly remaining at a place where a game of cards was played; penalty, a fine of $25.

The opinion states the case.

*Moss & Leak,* for appellant.—On question of private residence occu-

pied by a family: Purvis v. State, 62 Texas Crim. Rep., 302, 137 S. W. Rep., 701; Scott v. State, 69 Texas Crim. Rep., 615, 155 S. W. Rep., 226; Walters v. State, 58 Texas Crim. Rep., 240, 125 S. W. Rep., 11.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—This is a companion case of the Harley Sloan case, No. 3241, this day affirmed. Both were tried at the same time. In the opinion in the Sloan case, Judge Harper has stated the facts in both cases. The questions raised are the same in both. There is but one question we will further discuss in this in addition to its discussion in the Sloan case, and that is, whether or not the residence wherein this gaming and gambling was done was "a private residence occupied by a family."

The statutes are: "If any person shall play at any game of cards . . . at any place, except in a private residence occupied by a family . . . he shall be fined," etc. P. C., 548.

"If any person . . . shall go into or remain in any place where any of the games prohibited by this Act are, within his knowledge, being played . . . he shall be punished by fine," etc. P. C., 563.

"A residence may be a private residence, although it be not occupied by a family." Williams v. State, 48 Texas Crim. Rep., 325.

In discussing whether two grown sons and a brother-in-law were members of a man's family under the estray statute in Goode v. State, 16 Texas Crim. App., 411, this court said: "Mr. Webster defines the word 'family' to mean 'the collective body of persons who live in one house, or under one head or manager or household.' Mr. Bouvier defines it to be 'all the individuals who live under the authority of another, including the servants of the family.'" But the court held, in effect, that neither of said persons were members of his family.

Under our gaming statute this court held, in Patterson v. State, 55 Texas Crim. Rep., 393, that a bachelor living in a residence with some hired hands did not make the habitation "a private residence occupied by a family." And in Robbins v. State, 57 Texas Crim. Rep., 8, held to the same effect. In McCollum v. State, 49 Texas Crim. Rep., 383, it was shown that a father lived for some time in one of his residences with two of his sons, one 17, the other 15 years old, together with other members of his family. That some time before a game of cards was played in said residence he had gone and moved the rest of his family other than his said two sons to another of his residences, the said two sons remaining in said residence. The court held the habitation where the two sons remained was a residence, but not occupied by a family.

In Davis v. State, 68 Texas Crim. Rep., 259, it was shown Fitch and wife lived in their residence, and Davis, an unmarried man, had been staying with them. Fitch and wife went on a trip and were gone thirteen or fourteen days. Davis continued to stay at their residence while they were away, and permitted gambling therein several times during their

absence.  He was convicted for permitting property under his control to be used as a place for people to resort and gamble with cards, etc. He defended on the grounds that the place was "a private residence occupied by a family," and the indictment did not negative this.  This court held:

"For the time being, it was not a private residence occupied by a family, but appellant, an unmarried man, was staying there by permission at least.  It would be immaterial whether he was in possession by permission or had taken possession during Mr. Fitch's absence, believing that it would be agreeable with the owner.  If one should in any manner, while the family was absent, take possession of a house and permit gambling to be engaged in by all those who came to the house while he was in control of the house, and when it was shown that on five occasions during this time he permitted gambling to be carried on in the house, it would be an offense against the law."

It is clear our statutes make it an offense to play a game of cards at any place, or go into or remain at any place where such game is knowingly played, unless such game is played at a private residence and that that residence at the time the game is played is occupied by a family. It is not the private residence that protects the gaming from being unlawful, but it is the fact that that residence is at the time occupied by a family,—not that some family makes it their residence, but for the time is away.

The uncontradicted evidence shows that the wife of Henry Cantrell, in whose residence the gaming occurred, had gone to her parents and been there about two weeks, and that Cantrell himself was also at her parents, having gone there the day before.  Neither of them, nor any other constituent of the family, were occupying the residence at the time of the gaming.  These young men who were gaming there got permission from Cantrell to play dominoes,—not to gamble with cards,— while he and his family were not occupying their residence.  The length of time they were not occupying it is not decisive.  They did not have to be away from and out of, and not occupying their residence, for a year, nor a month,—just so they were distinctly not occupying it at the time, is all that was necessary.

Our statute makes it an offense for any person to keep a bawdy house in any house owned, occupied or controlled by him.  This court, in Flynn v. State, 35 Texas Crim. Rep., 220, and Willis v. State, 34 Texas Crim. Rep., 148, under said statute, in effect, held that although one person owns the house, yet if another has possession, charge or control of it for the time being, the latter is the keeper, etc.  This court, through Judge Hurt, in Stokeley v. State, 37 Texas Crim. Rep., 638, expressly held that where a man, in the absence of his wife, permitted one woman for less than half of one night to occupy his residence and have sexual intercourse with men, made the residence a bawdy house, and he was guilty of keeping it as such house.

As stated above, these young men got possession of Cantrell's residence, while unoccupied by him and his family, under the pretext to

play the innocent and lawful game of dominoes; but as soon as they got into it they at once converted it into a gambling house. This residence was not "occupied by a family" in contemplation of our statute under the facts and circumstances established in this case, so as to exempt appellant from conviction; therefore, the judgment will be affirmed.

*Affirmed.*