## CHARLEY KIRK V. THE STATE.

### No. 583.    Decided November 20th, 1895.

1. **Robbery—Indictment—Description of Money.**

   On a trial for robbery, where the indictment described the money taken as "certain silver coins, to-wit: three silver dollars in coin of the value of three dollars, one fifty cent piece in coin of the value of fifty cents, one nickle coin of the value of five cents, and one ten cent piece of the value of ten cents."    Held:    That the court will presume and hold that allegations after this form refer to money of the United States of America.

2. **Judge—Comment Upon Testimony.**

   It is the object of the code in every provision relating to that subject to prohibit the trial judge from expressing any opinion as to the weight of the testimony or the credibility of the witnesses in the presence and hearing of the jury, and upon a question as to the materiality of evidence offered by the prosecution, it is error for him to say that such evidence is highly material.

3. **Impeachment of One's Own Witness.**

   The State has the right to impeach the testimony of her own witness where such testimony is injurious to the State.    And where a witness for the State testified that a certain important suggestion was made by him, and it was to the interest of the State to show that it was made by another party, the State may, after laying the proper predicate, impeach the witness by showing that he had stated to others that such suggestion was made by the third party and not by himself.

4. **Robbery—Impeaching and Supporting a Witness.**

   On a trial for robbery, where the main State's witness had testified, that the defendant was the party who had robbed him, and the defense had proved the contradictory statements of the witness.    Held:    That the State had the right to support his testimony by showing that he had made similar statements to those testified to immediately after the transaction.

5. **Deaf Witness.**

   Where a witness who is not dumb, but is so deaf as not to be able to hear the questions asked him, it is legitimate and proper to submit the questions asked him in a manner that he can understand them—that is, in writing or printing.

APPEAL from the District Court of Coryell.    Tried below before Hon. J. S. STRAUGHAN.

This appeal is from a conviction for robbery, the punishment being assessed at ten years' imprisonment in the penitentiary.

A motion was made to quash the indictment, for insufficient description of the money alleged to have been taken, as to kind and of what nation the money was.    This motion to quash was overruled.  The evi-

dence shows that on the 29th day of December, 1894, F. F. Collins, the alleged injured party, was in the town of Gatesville, and, about sundown, was seen in a barroom, where he took one or more drinks of whiskey, in paying for which, he pulled out his purse, which contained a ten dollar bill and a five dollar bill and seventy-five cents in silver. Defendant, Charley Kirk, was in the barroom at the time. Collins lived some three miles from town. When he started out of the front door of the barroom to get on his horse to go home, defendant went out of the back door of the saloon. When Collins had gotten inside of the pasture gate, not far from his house, it then being some time after dark, he was assaulted and terribly beaten and robbed of his money. He reached home and it was found that he had several severe wounds upon the scalp of his head which appeared to have been made by his being struck over the head with some blunt instrument. His clothing was very bloody, and one of his pants pockets had been torn out and his purse, containing his money, was gone. He stated that the defendant had assaulted and robbed him. He also stated, to one of the witnesses, that the man who robbed him was the man he had sued. He had sued the defendant a short time before. The officers arrested defendant that night; and got his pistol, which afterwards, upon examination, was found to have blood spots upon it. A piece of the wooden handle of the pistol was missing and looked like it had been recently broken. On the next morning the officers examined defendant's clothing, and found that his shirt had several blood stains upon it. They repaired to the scene of the robbery, to try and discover some evidences of the difficulty and try and find the portion of the pistol handle which was missing.

In the meantime, between the place where the robbery had been committed and the town of Gatesville, a glove was found and picked up, and it was proved that it was of a kind similar to gloves previously worn by defendant. The locality of the scene of the robbery was thoroughly searched by the officers, and nothing found at or near the place except some horse tracks, which were measured, and these measures were afterwards applied to and fitted the tracks made by a pony owned by defendant. When the State sought to introduce proof of these horse tracks, the defendant objected that the testimony was immaterial; whereupon the court remarked, in the presence and hearing of the jury, that the testimony was of a highly material character, and defendant saved a bill of exceptions to this remark of the court.

On Saturday, January 20th, 1895, the defendant and his step-brother, M. M. Wilkins, were seen in conversation in the rear of a barroom in Gatesville. This was on Saturday before the Monday on which the term of court was to commence, and during which term defendant was to be tried. On the next day, Sunday, Wilkins and Tom Smith found old man Collins' pocket book inside the pasture and within fifty yards of the place where Collins said he had been assaulted and robbed. The theory of the State was that defendant had given this pocket book to his step-brother, on Saturday, at Gatesville, and that there was an

understanding between Wilkins and Smith that they were to find it on Sunday at the place of the robbery. After finding the pocket-book, Smith and Wilkins, on that same Sunday, turned over the pocket-book to the sheriff, Hammick. At the trial the defendant called Smith as a witness to testify as to the finding of the pocket-book. On cross-examination the State sought to elicit from the witness the fact, that Wilkins first suggested that they look around for the pocket-book after they had gotten into the pasture near the scene of the robbery. Smith's answer was of an equivocal character, at first, but finally made the statement that he himself first suggested that they look around for the pocket-book. The prosecution laid a predicate to impeach the witness, Smith, as to this matter; the defendant objected, that as to that particular matter Smith was the State's witness, and that the State could not impeach him with regard to it. The objection was overruled, and the State was permitted to prove, by the County Attorney, that after Smith had been brought to the court house as a witness, that he had talked to him about his testimony, and that Smith told him in that conversation, that, after he and Wilkins had gotten into the pasture, near the scene of the robbery, Wilkins had said to him: "Let's look around and see if we can't find the pocket-book." An exception was reserved to this testimony. The defendant having proved that the main State's witness, Collins, had made statements contradictory of those testified to by him on the trial, the State was permitted to prove, over objection of defendant, that just after the transaction, Collins had stated to other parties that the occurrence had taken place in the same manner as he had testified, as a witness, that it had occurred.

The witness Collins, though not a dumb man, was so deaf that he was hardly able to hear anything, and the court finally permitted the questions propounded to him to be printed and submitted to him to answer. Defendant saved a bill of exceptions to this method of examining the witness. Defendant also saved a bill of exceptions to the remarks of the prosecuting officer, in his closing argument to the jury, to-wit: "When the vigilant McClelland and Quesenberry had aroused the defendant from his lethargy into which he had been plunged for a whole minute, and told him that old man Collins had been robbed, he threw up his hands and said: 'Now, my God, boys, if you accuse me of this, I can show you where I have been every minute of this evening.' Has he told you where he was between the hours of sundown and a half an hour after dark?" the reason of the exception being, as assigned by defendant's counsel, because the law prohibits the District Attorney from commenting on the defendant's failure to testify.

*E. A. McDowell, S. B. Hawkins* and *White & Mings*, for appellant.—1. As to the "bill," we apprehend that the indictment will be conceded bad, and as to the coins, we deem it sufficient to say that the indictment must either allege that they were "money" or particularly describe same so as to identify them.

2.  The court erred is commenting on the evidence of the witness, Bateman, saying in the presence of the jury, "I think this testimony highly material."    Art. 729 Code Crim. Proc. of Tex.; Copeny v. State, 10 Tex. Crim. App., 473; Moncallo v. State, 12 Tex. Crim. App., 171; Crook v. State, 27 Tex. Crim. App., 241; Rodriguez v. State, 23 Tex. Crim. App., 507.

3.  The court erred in permitting the State to impeach the witness, Tom Smith.

It is not admissible to impeach a witness by contradictory statements made while talking about the case, under rule, to an attorney in the case.

A witness cannot be impeached by contradictory statements upon matters collateral to the issue and immaterial, and to permit it is reversible error.

The witness, Tom Smith, introduced by defendant, was asked upon his cross-examination by the District Attorney: "Did you not on yesterday, tell me in the court house in the presence of J. H. Arnold, County Attorney, that when you and Wilkins rode by the gate where this robbery is alleged to have been committed, on the occasion you found Collins' purse, that Wilkins said to you, 'Let's get down and go in and look for that money?'"    And witness being required to answer, over defendant's exception, denied having so stated, but said the reverse was true; that he, Smith, had first proposed to look for the money.    The witness was, under the rule, talking to the District Attorney upon the occasion inquired about.

The State was permitted to introduce J. H. Arnold, County Attorney, as a witness, and he testified contradicting the witness, Smith, saying that Smith had stated on the occasion inquired about, to the District Attorney, that Wilkins proposed first to "get down and go in there and look for that money."    That the witness was then, under the rule, talking to the District Attorney in the County Attorney's office, by order of the court.    To the entire proceeding defendant excepted.

On first proposition: Brown v. State, 3 Tex. Crim. App., 294.

On second proposition:  Drake v. State, 29 Tex. Crim. App., 265; Johnson v. State, 27 Tex. Crim. App., 172–175.

The court erred in permitting the District Attorney to print and write questions to the witness, F. F. Collins.

The court erred in refusing to grant a new trial, because the District Attorney commented on the failure of defendant to testify.  Code Crim. Proc., Art. 730b; Brazell v. State, 26 S. W. Rep., 723; State v. Moxley, 14 S. W. Rep., 974; Staples v. State, 14 S. W. Rep., 603.

*Mann Trice*, Assistant Attorney-General, for the State.—1.  The first question presented is as to the validity of the indictment.    This indictment, I think, is sufficient for the reason that the allegations, "three silver dollars in coin of the value of $3, one fifty-cent piece in coin of the value of 50 cents, and one nickle coin of the value of 5 cents," is sufficient to show that the same was money,   The use of the term "dol-

lars" clearly indicates and sufficiently alleges that the coins mentioned were money, and especially in view of the fact that the value of each coin is alleged. The word "dollar" can only mean dollar in the legal currency of the United States. Halsted v. Meeker, 18 N. J. Equity, 136. "The word dollar in a check means *the lawful money of the United States,* and it cannot be explained by a verbal agreement or custom to have a different meaning." Bank of the State v. Burton, 27 Ind., 426. "A written instrument for the payment of money expressed to be paya- ble in *dollars* is in legal effect payable in whatever the laws of the United States declares to be legal tender." Miller v. Lacy, 33 Texas, 351. "A note for so many dollars is a note for the direct payment of money, and for the satisfaction of which a tender of bullion, gold or silver bars, will not be sufficient." Hart v. Flynn, 8 Dana, 190. The term "dollar," then, having a fixed judicial meaning, it would be an act of superrogation to follow the allegation, "three silver dollars in coin of the value of $3," up with the further allegation that the same was money. This is its legal effect and signification, of which courts must take judicial cognizance. Menear v. State, 30 Tex. Crim. App., 475.

"The allegation in an indictment should be such as will enable the court to see that the thing stolen was in law a subject of larceny, and the jury to discern that the article proved to have been stolen is the same mentioned in the indictment." Bishop's Crim. Proc., Sec. 702.

The allegations in this indictment fully meet this rule, and, as said by by Davidson, Judge, in McKane v. State, 11 Ind., 195, "true, there are authorities which hold that money should be described as so many pieces of gold or silver coin, called, naming them, etc., and that the species of coin must by specified; but we are unable to perceive a reason why the description used in this instance should not be regarded as equally certain. We take a piece of money of the gold coin, called a dollar. Is it not just as intelligible to say sixty dollars of the gold coin, as to say sixty pieces of gold coin called sixty dollars?" It is contended, then, that the allegation "three silver dollars in coin of the value of three silver dol- lars," is a sufficient description. "A silver dollar in coin, a fifty-cent piece in coin, a five-cent piece in coin, one nickle coin of the value of five cents, are all legal tender coin and money of the United States, and its value is fixed by act of Congress and declared to be legal tender at their nominal value." U. S. Rev. Stats., Secs. 3584, 3590, 3515, 3587.

2. The language of the court in overruling the objection to testi- mony of witness, Bateman, as to the identity of defendant's horse tracks, near the scene of robbery, in no way infracts Art. 729, Code Crim. Proc., by indicating his opinion any more than was necessary to decide the question at issue, viz: the materiality of the testimony which was objected to as being immaterial.

3. The placing of witnesses under the rule, and the order governing their conduct while under rule, is a question largely in the discretion of the court, and will not be reviewed on appeal, unless it is apparent that

such discretion was abused. The conversation about which the impeaching testimony was offered, occurred in the presence of an officer of the court, to-wit: The County Attorney of Coryell County, and brings the case within the rule announced in Brown v. State, 3 Tex. Crim. App., 313. It is there said that conversations had between counsel and the witnesses under the rule should be in the presence of some officer of the court, so that in any controversy between counsel and the witness, the officer may be called to determine the question of veracity between the two. The contradiction and impeachment of the witness, Smith, was as to the matter drawn out by defendant, and only proposed to traverse the statement made by the witness while testifying in behalf of the defendant. The predicate was properly laid and referred to the identical transaction about which the witness had testified, and the defendant cannot now be heard to complain that the matter inquired about was immaterial and a collateral issue, as he himself had injected it into the case, and relied upon the fact that the pocket-book of Collins had been found some fifty yards from the scene of the alleged robbery, as tending to show that if he made any assault upon Collins that the same was not for the purpose of robbery. But independent of this the testimony was admissible as going to the credibility of the witness. Carroll v. State, 32 Tex. Crim. Rep., 431; Lights v. State, 21 Tex. Crim. App., 308.

4. The court properly admitted the testimony of the injured party, F. P. Collins. His examination, as to his competency as a witness, clearly elicited the fact that he was thoroughly competent and understood the obligations of an oath. See trial court's explanations to bills of exception. The witness appeared to be almost deaf, but aside from this infirmtiy he was intelligent, thoroughly understood the obligations of an oath, and identified defendant with unerring certainty. The action of the trial court, in passing upon the competency of a witness, and its determining whether or not the witness understands the obligations of an oath, will not be revised on appeal, unless it appears that he abused his discretion in permitting the witness to testify. Hawkins v. State, 27 Tex. Crim. App., 273; Johnson v. State, 1 Tex. Crim. App., 609; Brown v. State, 2 Tex. Crim. App., 115; Williams v. State, 12 Tex. Crim. App., 127.

5. The jury being the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, the court properly refused to charge on the effect of the pretended impeachment of the testimony of the injured party, Collins. This was a matter peculiarly within the province of the jury, to either credit or discredit him. The record shows an unprovoked and brutal assault made by the appellant on Collins, and that by means of this assault the robbery was committed. The evidence is amply sufficient to sustain the verdict, the charge of the court fairly presents the law, and the judgment should be affirmed.

HURT, PRESIDING JUDGE.—The appellant in this case was convicted of robbery, and given ten years in the penitentiary. The indictment is sufficient as to the coins described. The description of the property in this indictment is "certain silver coins, to-wit: three silver dollars in coin of the value of $3, one fifty-cent piece in coin of the value of 50 cents, one ten-cent piece in coin of the value of 10 cents, and one nickle coin of the value of 5 cents." It will be noticed that these are not designated as money or coin of the United States, but we will presume, and so hold, that an allegation after this form refers to money of the United States of America. Menear v. State, 30 Tex. Crim. App., 475; Nelson v. State, ante p. 205. To corroborate the prosecutor, who swears positively that appellant was the party who assaulted and robbed him, the State introduced evidence of horse tracks found near the place of robbery, and circumstances which tended strongly to show that they were made by the appellant's horse. The appellant objected to this evidence, on the ground that it was immaterial. In ruling upon the admissibility of this testimony, the learned judge below remarked, in the hearing of the jury, that he thought that evidence of that character was highly material. To these remarks, appellant, by counsel, objected, reserving his bill of exceptions. Article 677, Code Crim. Proc., provides that, in charging the jury, the court shall not express any opinion as to the weight of the evidence. Article 729 provides that, in ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of same, or its bearing in the case, but shall simply decide whether or not it be admissible; nor shall he at any stage of the proceedings previous to the return of the verdict make any remark calculated to convey to the jury his opinion of the case. Now, let us suppose that, in the charge of the court, he had instructed the jury, with reference to the horse tracks, that he believed this was highly important and material testimony; would he not have been charging the jury in regard to the weight of the testimony? Most evidently he would. It is the object of our code, gathered from every provision relating to that subject, to prohibit the judge from expressing any opinion as to the weight of the testimony or credibility of the witnesses. The court can neither do this in its charge nor in ruling upon the admissibility of testimony. See Wilson v. State, 17 Tex. Crim. App., 525; Crook v. State, 27 Tex. Crim. App., 198; Reason v. State (Tex. Crim. App.), 30 S. W. Rep., 780; Lawson v. State (decided at present term), 32 S. W. Rep., 895.

It was to the interest of the State, under the facts of this case, to prove that Wilkins suggested a search for the purse. The State attempted to prove this fact by one Smith, who swore, however, that he had suggested it. After laying the proper predicate, over the objections of the appellant, the State impeached this witness by proving that he had stated to others that Wilkins made the suggestion. If the witness, Smith, had simply stated that he knew nothing about that matter, as to who suggested it or not, or had stated nothing about the matter, then there

was nothing upon which he could have been impeached. But he states that he made the suggestion. That proved that Wilkins did not; and such proof, under the facts of this case, was injurious to the State in regard to that particular matter. This being the case, the State had a right to impeach him · in the manner in which it was done. The prosecutor, Collins, swore positively to the identity of appellant as being the robber. Appellant introduced evidence for the purpose of showing that he had made contradictory statements in regard to this fact, and also that he had instituted a civil suit against the appellant for damages growing out of the robbery. In either state of case the party introducing the witness had the right to support him by proof that he made, soon after the transaction, similar statements to those sworn to on the trial. This is not an open question in this State. It appears from the record that Collins, the prosecutor, was very deaf, but not dumb, and that it was exceedingly difficult for him to understand questions propounded to him. The practice pursued by the court was eminently proper under this state of the case. The questions were printed, and presented to the witness, and he understood them; but when they were reduced to writing he did not seem to comprehend them. This, however, may have been because of his very limited education, and the manner in which they were written, or possibly on account of the chirography of the writer. See Rice, Crim. Ev., p. 289, and authorities cited. We do not construe the remarks of the District Attorney as alluding to the fact that the appellant failed to testify in the case. The remarks in regard to the examination of the wife will not occur on another trial. This, however, was controlled by the instructions of the court. For the reasons above indicated, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*