## N. G. FERRELL V. STATE.

### No. 1958. Decided December 11, 1912.

### Rehearing Denied January 22, 1913.

**1.—Misapplication of Public Funds—Tax Collector—Indictment—Words and Phrases.**

Where, upon trial for misapplication of public funds, the indictment in two counts charged the defendant with such offense, strictly following the statute, the same was sufficient, although in the second count, the word, ''secret,'' was used instead of that used in the statute; towit, ''secrete.''

**2.—Same—Rule Stated—Indictment—Certainty in Pleading.**

Under Article 460, Code Crim. Proc., the words used in a statute to define an offense need not be strictly pursued in the indictment, where the same charges the offense in ordinary and concise language; and under Article 453, id, special or particular terms may be alleged in general terms, and only such certainty is required as will enable the accused to plead the judgment in bar of any other prosecution.

**3.—Same—Evidence—Tax Roll.**

Upon trial of misapplication of public funds by a tax collector, there was no error in admitting in evidence the tax rolls for the assessment of property for a certain year upon which defendant collected money and afterwards embezzled it.

**4.—Same—Evidence—Conversion—Bill of Exceptions.**

Upon trial of the misapplication of public funds against the county tax collector, there was no error in permitting the State to show that the defendant at various times took money out of his tax collection for his personal use; besides, the bill of exception was defective.

**5.—Same—Evidence—Bank Books.**

Where, upon trial of misapplication of public funds against defendant as tax collector, it was shown that the defendant kept said funds with certain banks who kept an account thereof, showing that defendant drew out the same on his own and his deputies' checks the funds so deposited, there was no error in introducing such bank books after the proper predicate was laid as to their correctness.

**6.—Same—Evidence—Remarks by Judge.**

Upon trial of a misapplication of public funds against the defendant as tax collector, where the defendant testified that someone else misappropriated said money, there was no error in permitting the State, on cross-examination, to require defendant to state the date, the amount, and the items, which said other parties appropriated, as claimed by the defendant; and the remarks by the judge to defendant's counsel in a low tone of voice which the jury did not hear that the defendant ought to be able to tell, was not reversible error.

**7.—Same—Evidence—Expenditure of Money.**

Upon trial of a misapplication of public funds by defendant as tax collector, there was no error, on cross-examination of defendant, to show that he told another party that he let a certain female have $900, etc., during the time he was charged with said offense.

**8.—Same—Evidence—Reports of Comptroller.**

Upon trial of a misapplication of public funds of defendant as tax collector, there was no error in admitting in evidence the defendant's reports as such collector to the State Comptroller.

**9.—Same—Charge of Court—Current Money of the United States.**

Where defendant was charged with the misapplication of public funds as tax collector, and the money was alleged to be current money of the United States, there was no error in refusing a special requested charge that this meant legal tender coins, or legal tender treasury notes of the United States.

**10.—Same Definition—Current Money of the United States.**

It is beyond question the settled law of this State that money and current money of the United States means and includes gold, silver, copper or other coin, bank bills, government notes, or other circulative medium current as money. Following Butler v. State, 46 Texas Crim. Rep., 287, and other cases.

**11.—Same—Charge of Court—Imputing Crime to Another.**

Where, upon trial of a misapplication of public funds as tax collector, the defendant claimed that some one else illegally converted said money, and the court submitted a proper charge on this issue and no special charge was requested, there was no error.

**12.—Same—Charge of Court—Circumstantial Evidence.**

Where the conviction did not wholly depend upon circumstantial evidence, but the court, nevertheless, submitted a charge on circumstantial evidence, and no special charge was requested, there was no error.

**13.—Same—Charge of Court—Different Counts—General Verdict.**

Where the indictment charged the fraudulent misapplication and conversion of public funds in one count of the indictment, and in the second that defendant fraudulently secreted said money with intent to fraudulently convert it, and both counts were submitted and a general verdict of guilty returned, there was no error in the court's submission of both counts; besides, there was evidence to support both counts.

**14.—Same—Sufficiency of the Evidence.**

Where, upon trial of a misapplication of public funds, the evidence sustained the conviction, there was no error.

**15.—Same—Current Money of the United States.**

Current money of the United States, and any such like general description, whether in theft or any character of embezzlement case, means and includes gold and silver, copper or other coin, bank bills, government notes, or other circulating medium, current as money; and also includes gold and silver certificates and national bank bills. Following Berry v. State, 46 Texas Crim. Rep., 420; Butler v. State, 46 Texas Crim. Rep., 287; Overruling Lewis v. State, 28 Texas Crim. App., 140; Kimbrough v. State, 28 Texas Crim. App., 367; Summers v. State, 45 Texas Crim. Rep., 423; Block v. State, 44 Texas, 620, and other cases.

Appeal from the District Court of Jones. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of fraudulent misapplication of public funds; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Brooks & Brooks* and *C. C. Ferrell*, for appellant.—Cited cases in opinion.

On question of insufficiency of the indictment: Hawkins v. State, 64 Tex. Crim. Rep., 480, 142 S. W. Rep., 917.

*C. E. Lane*, Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was the tax collector of Jones County for the term beginning after the general election in November, 1908, and held the office until some time in the latter part of July, 1910, when he resigned. He was indicted by the grand jury of Jones County for misapplying the money of the State which he had collected as taxes, and given the lowest penalty.

The law, Article 96 Penal Code, under which the conviction was had is, if any officer of the government, who is by law a receiver or depositary of public money * * * shall fraudulently take or misapply, or convert to his own use, any part of such public money or secrete the same with intent to take, misapply or convert it to his own use * * * he shall be punished, etc. There were some fourteen counts in the indictment. Only two were submitted by the court to the jury for a finding. Both of these counts follow substantially and as literally as can be the form laid down by Judge White under said article of the Code in his annotation thereof, except that in the first of these counts after all of the proper and necessary allegations in the first part, charges, "which said sum of money, he, the said N. G. Ferrell, did then and there unlawfully and fraudulently take, misapply and convert to his own use"; in the other count it is charged, "which said money he, the said N. G. Ferrell, did unlawfully and fraudulently *secret* the same with intent to take, misapply and convert the said money to his own use." It will be noted that in Judge White's form it is that the accused did "unlawfully and fraudulently secrete and take and misapply and convert to his own use." The first count in this indictment leaves out the word "secrete" and uses the others contained in the statute, "did take and misapply and convert." And the other count in this indictment presents *secreting* as a separate count but misspells the word "secrete" as contained in the statute.

The appellant made a motion to quash the second count above stated, because it did not follow the language of the statute defining the offense nor use other words conveying the same meaning and the first of said counts, together with certain others contained in the indictment, because they were surplusage and unnecessary and calculated to confuse and mislead the jury and prejudice appellant's right.

There can be no question as to the correctness of the first count above stated. It follows the statute as strictly and as literally as could be in its language.

We take it that appellant's objection to the other count, while not specifically so stated, is to the word "secret" instead of that used in the statute, "secrete."

Our statute expressly provides that the "words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words." C. C. P. Article 460. Again, Article 460 is: "An indictment for any offense against the penal laws of this State shall be deemed sufficient which charges the

commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.'' The next article is: ''When a statute creating or defining any offense uses special or particular terms, an indictment on it may use the general term, which, in common language, embraces the special term.'' Again, Article 453, is: ''The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense.''

Mr. Webster defines ''secrete'' (the verb transitive), in his main first definition as: ''To deposit in a place of hiding, to hide, to conceal.'' He defines the adjective ''secret'' as: ''Hidden, concealed,'' and the noun as: ''Something studiously concealed, a thing kept from general knowledge, what is not revealed, or not to be revealed.'' The Century Dictionary defines the verb transitive, ''secrete''; ''To make or keep secret, hide, conceal, remove from observation, or the knowledge of others.'' And defines the adjective, ''secret'' as: ''Set or kept apart, hidden, concealed,'' and defines the noun ''secret'' as: ''Something studiously hidden or concealed, a thing kept from general knowledge, what is not or should not be revealed.''

So that the use of the word ''secret'' in this count of the indictment wherein it charges, ''which said money he, the said N. G. Ferrell, did unlawfully and fraudulently secret the same with intent to take, misapply and convert the said money to his own use,'' in our opinion is equivalent and means substantially the same thing as if the word ''secrete,'' the statutory word, has been used. Whit's C. C. P. sec. 344, subd. 5 p. 254, where some of the authorities are collated. And in our opinion there is no question but that a person of common understanding could know and did know from this allegation what is meant and with that degree of certainty that gave the appellant notice of the particular offense with which he is charged and did and would enable the court, on conviction, to pronounce a proper judgment in the case and would, without question, enable the appellant to plead the judgment in this cause in bar of any prosecution for the same offense where the word ''secrete'' instead of ''secret'' should be used.

The uncontradicted evidence in this case shows clearly that the tax assessor made out the tax roll for the year 1909; that it was submitted to the Commissioners' Court and, perhaps after some corrections, it was approved by the Commissioners' Court and then turned over to and received by appellant about the 16th of October, 1909, as such tax roll, and that he and his deputies proceeded to collect, by virtue of that tax roll, the taxes for said year in accordance with that roll; that he received a large amount of county tax and properly accounted to and paid to the county all that he had received; that he received a large

sum of State tax and that he did not account for and did not pay to the State or to anyone for it, the sum of $6,465.65, and had not paid the said sum or any part thereof to the State or to anyone for the State, at the time of the trial of this case. It is true that appellant personally did not collect all of this tax himself. His properly authorized deputies did do so for him at his instance and with his knowledge and all of said money, other than what he himself took out of the collections as they were being made by him or his deputies, were deposited from time to time in three banks and that only so much of the funds so received by him and his deputies and deposited in said banks was paid to the State by his deputies and said bank as was directed and authorized by him, and that he personally took from the collections from time to time and drew from the banks all of said $6,465.65 and that no one else other than he has taken, misapplied, or converted the same to his own use, or secreted the same or any part thereof. It is unnecessary to detail this evidence. It is shown in a statement of facts of some 235 typewritten pages all of which we have read and considered.

By one bill appellant complains of the testimony of the tax assessor shown on some four or five typewritten pages, and in connection therewith, the affidavit that he made to the correctness of said rolls and the approval thereof by the Commissioners' Court. By this bill appellant makes many objections to the introduction of said tax roll, but they are made as objections and not approved as facts by the court in allowing the bill. The gist of the matter, as we understand it, is that there was some uncertainty as to when the assessor made his affidavit to the correctness of said roll and some confusion in the copy of the certificate thereon by the Commissioners' Court of whether it is the tax rolls for 1909, or that for 1908, but taking it as a whole, it is reasonably certain that it was the tax rolls for 1909 and not 1908, and that the tax assessor did make his affidavit substantially in compliance with the law, thereto. But even if there should be some doubt as to this there is no question whatever but that appellant received this tax roll as the tax roll for 1909, and that it was the assessment of the property of said county for 1909, and that he collected the money thereunder and that the money collected thereunder and thereon was the State's money which he has taken, misapplied, converted to his own use or secreted.

By another bill appellant complains of the question and answer of the State's witness, Will Griffith, who was one of appellant's deputies and who collected and received as such in connection with another deputy or deputies the said taxes. The question was this: "State whether or not you have seen Mr. Ferrell (appellant) and if so, on how many occasions take money from the tax collector's office out of the tax collections for his own personal use?" To which he answered: "He might have possibly taken as much as $5 or $10. I think I have seen him take as much as $5 or $10." The objection to this testimony

was that this was only the opinion of the witness as to whether the money appellant took was tax money and as to whether appellant took it for his own personal use. The bill is very meagre but as it is presented it is our opinion that this question and answer were proper. Certainly, if this witness saw appellant take, from time to time, the tax money which he and the other deputies were collecting and in charge of at the time, and knew that appellant was taking it for his own use, he was competent to so testify. It is not disclosed by the bill that the witness did not know what he testified, and if he did not, it could have been shown by further or cross-examination and if so shown, then his testimony could have been excluded, but as the bill presents it, it shows no error.

By other bills appellant complains of the testimony of the custodian of the bank books showing the account that appellant kept with said respective banks, the amount of his deposits and the amount of the checks against the same and the payment to appellant or on his checks, and that of his duly authorized deputies, of the funds so deposited in said bank. There are various objections to the testimony of these witnesses and the books. The witnesses fully qualified to testify as they did and identified and proved up the correctness of the books and the entries therein so as to clearly authorize their introduction in evidence.

By another bill it appears that while appellant himself was being cross-examined by the district attorney, and having testified that he was thoroughly convinced what became of said tax money ($6,465.65), and that he had told a certain person that McJilton and Lige Davis and Covey were the men that stole it and that he had told said person that, the first time he talked to them about it and that "I still stick to it." Thereupon the district attorney asked him to tell the time, the date, the amount and when and where that money, or one item that he could say that these parties or either of them ever appropriated. The appellant objected to this by his attorney because it would be mighty hard for him to tell the date, the hour and the minute when it was stolen and that said question was not proper; that the court thereupon remarked that he thought it a very proper question, that if "I say a man stole my money, I ought to be able to tell how, when and where he got it." The appellant then answered by stating, "I think they did it simply because there was nobody else had any show at it. As to whether I had a show at it and checked on it all the time, will say, No, sir, I did not on the State and county money." It seems that the appellant's objection is more to the remark of the court above stated than to the question to the appellant. Certainly the question to the appellant was not improper and he could explain in his answer why he could not fix the time, date, moment and when and where any of the money was stolen by the parties charged by him. The court in allowing the bill, qualified it by stating that the remark he made, above complained of, was made to one of the attorneys in answer to his argu-

ment in such low tone of voice that in the opinion of the court the jury did not hear it and it was not intended for them to hear it. So that if the remark of the court was improper, the bill as qualified shows no error.

Neither is there any error shown in another bill by appellant complaining that the district attorney was permitted to ask appellant on cross-examination of him if it was not a fact that he told Jap Sprayberry that he let Maggie Neville have $900 to go into the millinery business. Certainly the State had the right to show by appellant when he made himself a witness, what he did with this money in giving, or letting others have money during the time he is charged to have misapplied any of this State's money.

Neither did the court err in permitting the many reports of the appellant to the State Comptroller, which were clearly and fully proven up and established, to be introduced in evidence, even though only some of them were signed by appellant personally, but all were either signed and sworn to by him or one of his legally authorized deputies.

The court did not err in refusing to give appellant's special charge as follows: "You are charged that the term, 'current money of the United States' as used in the indictment in this case means legal tender, coins or legal tender treasury notes of the United States. It is therefore essential to a legal conviction that the State should prove the fraudulent conversion or misapplication by the defendant of legal tender, metallic coins, or of legal tender currency of the United States," the court having given the following charge: "You are therefore charged that if you believe from the evidence beyond a reasonable doubt, that the defendant, N. G. Ferrell, was tax collector of Jones County and of the State of Texas, during the period of time from October the 1st, 1909, to July 12th, 1910, and that the defendant, N. G. Ferrell, was then and there by law and in virtue of his office a receiver of and depositary of public money belonging to the State, and by virtue of his said office there had come into his hands and was then and there in his possession a certain sum of money, to wit: Six Thousand Four Hundred Sixty-five dollars and sixty-five cents current money of the United States of the value of Six Thousand Four Hundred Sixty-five dollars and sixty-five cents, and you further believe from the evidence beyond a reasonable doubt that the defendant did, in Jones County, Texas, at any time within the period of time embraced between October 1st, 1909, to July 12th, 1910, unlawfully and fraudulently misapply or convert to his own use any part of said sum of money, then you will find the defendant guilty as charged and assess his punishment at confinement in the penitentiary for any length of time in the discretion of the jury, provided it be for not less than two nor more than ten years, as the jury may determine and so state in their verdict."

It is beyond question the settled law of this State that money and current money of the United States, means and includes gold, silver,

copper or other coin, bank bills, government notes, or other circulative medium current as money. P. C., Art. 1419; Berry v. State, 46 Tex. Crim. Rep., 420; 80 S. W. Rep., 630; Butler v. State, 46 Texas Crim. Rep., 287; Lewis v. State, 28 Texas Crim. Rep., 140; Medders v. State, 54 Texas Crim. Rep., 494; Sims v. State, 64 Tex. Crim. Rep., 435; 142 S. W. Rep., 572, and cases cited therein.

It seems that appellant's only defense was that he did not take, appropriate or convert any of this money, or secrete it, but that either the banks where the money had been deposited or his deputies had done so. The party named McJilton was his main deputy, who helped to collect the taxes and the other two persons named in the bill above, Lige Davis and Covey, were two of the bankers. The court, therefore, did not err in charging the jury, "and you are further charged that if you believe from the evidence that the money belonging to the State, with which the defendant in this case is charged with misappropriating, or converting to his own use, was in fact appropriated by another or by others than the defendant and without the knowledge or consent of the defendant, then in no event could you convict the defendant for any such sum appropriated, if any, nor consider same as a circumstance against him in this case." No special charge was asked by appellant on this point at all.

The conviction in this case was secured partially by circumstantial evidence,—not wholly so. In such case it is not required of the court to give a charge on circumstantial evidence, but the court in this case did give a charge on circumstantial evidence which has uniformly, to the extent it goes, been approved by this court. Appellant in this case requested no charge whatever on the subject and his complaint to what the court did give is not that it should not have given any on the subject at all, but that it was not full enough. This presents no error.

The appellant complains of that portion of the charge of the court submitting to them for a finding, under the second count above stated, —that is, as to secreting the said money with intent to take, convert, or misapply the same to his own use, claiming there was no evidence in the record authorizing such a charge. In our opinion the evidence does amply authorize the submission of such charge. It tends to show that the appellant from time to time took from the drawer where the tax money was placed as it was collected, different sums of money and that he had access thereto at all times and that he himself sometimes collected the tax money; that he, from time to time, when he had large sums of money in each of the three banks where it was deposited when collected in his name as tax collector, instructed the banks, either personally, or through his different deputies whom he required to do so to place said funds to his individual personal credit and change the account from him as tax collector to his personal individual name, and that he from time to time drew out different sums of this money which was not sent to the State, ultimately drawing it all out, leaving a deficit of $6,465.65 due to the State, and that from time to time during this

time he sent various sums of it by telegraph and otherwise to different women at different points in and out of this State, and that he run a house in Wichita Falls and got into trouble thereabouts for there running it as a disorderly house. Upon the whole, as stated above, the evidence clearly authorized the court to submit that count of the indictment by this charge, which he did.

Besides this, the verdict in the case was a general one and even if this count in the indictment had been insufficient and this question improperly submitted to the jury, yet, unquestionably the other count was perfectly good, and the proof being clearly and amply sufficient to sustain a conviction under that, no reversible error is thereby shown. For an indictment may contain as many counts charging the same offense as may. be thought necessary to allege the offense under the statute and if anyone of the counts be sufficient the indictment is sufficient. (C. C. P., Art. 481.) And where the verdict is general and any one of the counts is sufficient and the evidence is sufficient to sustain that count, the court will apply the verdict to that count. Warner .v. State, 66 Texas Crim. Rep., 356, 147 S. W. 265, and authorities there cited. It is needless to cite other authorities.

There is no other question attempted to be raised which it is necessary to consider. The evidence clearly and amply justified the verdict and the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

January 22, 1913.

PRENDERGAST, JUDGE.—Appellant, in his motion for rehearing, contends that this court erred in holding that the court below did not err in refusing to give his special charge requested, which is quoted in the original opinion herein. And that this court erred in holding that the evidence in this case was sufficient to warrant the conviction, because the evidence did not establish that the money embezzled by appellant was "current money of the United States." Appellant cites and quotes from the opinion of this court in Lewis v. State, 28 Texas Crim. App., 140, and Kimbrough v. State, 28 Texas Crim. App., 367, and Summers v. State, 45 Texas Crim. Rep., 423, and from other cases along the same line. All these cases are practically bottomed on Block v. State, 44 Texas, 620, wherein it was held that money, under our statutes, meant only that character of money under our law which was legal tender and did not include bank bills, though they pass as current. If this line of decisions is now the law, then appellant's contention might be correct; but in several well considered cases by this court since the decisions in those cases were announced, this court has held expressly to the contrary and specifically overruled all such cases. In the case of Berry v. State, 46 Texas Crim. Rep., 420, Judge Henderson cites some of these cases and particularly Lewis v. State, supra, Summers v. State, supra, and others, and said:

"However, the decisions on this subject have not been uniform. In Kimbrough v. State, 28 Texas Crim. App., 367, it was held that United States paper currency embraces every character of paper currency issued and authorized to be issued as a medium of exchange and circulated as money under the authority of the laws of the United States, and included national bank bills or United States gold or silver certificates. And this view appears to have been followed in Dennis v. State, 74 S. W. Rep., 559, and other cases. In Summers v. State, supra, another view was taken. There it was held that the indictment charged theft of one five-dollar bill current money of the United States of the value of five dollars, only included United States treasury notes; that is, legal tender notes and demand notes of the United States. This case followed the line of decisions first above noted, and is not in harmony with Kimbrough's and Dennis' case and others. From the decisions on this subject it appears that the difficulty has been in regard to holding gold and silver certificates of the United States and national bank bills to be currency money of the United States. In order to support the view that these are not to be considered money of the United States, some nice distinctions have been drawn in construing article 866, Penal Code, as to what is meant by money thereunder. Without undertaking to discuss or criticise those opinions, we would observe that we can see no good reason why an indictment which charges theft of current money of the United States, or of currency of the United States, should not include United States gold and silver certificates and national bank bills of the United States. The payment of these, as we understand the Federal statutes, are safeguarded by law, and are in effect guaranteed by the United States government. Gold and silver certificates are issued directly by the government, predicated on gold and silver deposited in the treasury of the United States, and the government issues these directly. National bank bills are issued by the government predicated on bonds deposited by national banks with the government, which in turn delivers said bank bills to the particular national bank to which they were issued; and all these pass current as money at their face value in every State of the Union. According to the familiar principle 'that things which are equal to the same thing are equal to each other,' we hold that, where an indictment charges theft of bills 'in the currency of the United States of America,' or theft of 'current money of the United States of America,' giving the denomination and value thereof, the allegation can be proven by theft of United States legal tender treasury notes, or of United States demand notes, or of United States gold or silver certificates, or of national bank bills of the United States. We are not now discussing metallic coin. Of course, gold and silver coins of the United States have always been treated as money under our statutes. *All cases in conflict with this opinion are hereby overruled.*

"We accordingly hold that in this case there was no variance between the proof introduced and the allegations in the indictment. That is,

the witness Kelly testified that he was unable to say whether the $5 and $10 bills lost by him were treasury notes, national bank bills, gold or silver certificates of the United States. If they were of the denomination alleged in the indictment, and were any of the character of currency stated above, it was sufficient proof of the kind of currency alleged in the indictment.'' That case was a conviction for theft from the person.

Again, in another well considered case, wherein the opinion was rendered by Judge Henderson, Butler v. State, 46 Texas Crim. Rep., 287, which was an embezzlement of public money belonging to a county, precisely the same character of case as this, he said:

''Appellant complains of the action of the court instructing the jury, in effect, that while appellant was treasurer he was only authorized to receive legal tender metallic coin or legal tender notes and current money of the United States of America, for and on behalf of the county, and that he was only authorized to pay the same character of money to the county. If this clause of the charge means legal tender metallic coin or legal tender notes only, then the court's charge under the recent authorities was evidently too restrictive. But it occurs to us that the further expression, 'current money of the United States of America,' is more comprehensive and would cover any kind of currency of the United States of America which is guaranteed by the government and passes as money. If the latter is a correct interpretation, then it would cover any character of current money of the United States; and as stated before, this has been recently so held. See Berry v. State, supra. And on this same subject see article 941, Penal Code, which refers to the embezzlement of money and makes this term include, besides gold and silver, copper or other coin, bank bills, government notes or other circulating medium current as money. If this construction were not correct, then it would almost invariably be impossible to determine what character of funds a public official may have embezzled; and it would rarely occur that the State would be able to show an embezzlement of legal tender notes of the United States.

''Appellant requested a number of charges to the effect that defendant could only be convicted in case it should be shown he had embezzled national bank notes or United States treasury notes. These charges were refused by the court, and in accordance with our view, as expressed above, they were correctly refused. But even if it be conceded that the court's charge as given restricted proof of embezzlement to coin money of the United States and United States treasury notes, we fail to see how this could injure appellant. He made no effort to satisfy his confessed defalcation to the county of some three thousand dollars in any kind of currency or money or in any other character of funds. He had none, and tendered none. He admitted that he had money belonging to the county, and it must be assumed that this was such money as he was authorized to receive; but if in liquidation of this he had offered national bank bills or gold or silver certificates or war-

rants, or other funds, and these had been refused by the county, then he would have just cause for complaint.''

Appellant also calls our attention to the fact that the case of Lewis v. State, supra, has many times and in many cases been referred to and approved. In most, if not all, of the cases where the Lewis case was cited with approval it was on that part of the decision which held the indictment sufficient which described the stolen or embezzled money as ''Five Thousand Five Hundred Dollars in money, the same being then and there current money of the United States.'' It is true the distinction, as stated by Judge Henderson in the Butler case, supra, unfortunately has not always been kept up and noted by the court in the decisions.

In order that in future there may be no misunderstanding about the holding of this court, we here specifically state that we will adhere to the decisions in Perry v. State, supra, and Butler v. State, supra, and will hold that current money of the United States, or any such like general description, whether in theft or any character of embezzlement case, means and includes gold and silver, copper or other coin, bank bills, government notes or other circulating medium current as money; and also includes gold and silver certificates and national bank bills, and will adhere to the decision in the Berry case, supra, which overrules all cases in conflict therewith. See also Dennis v. State, 74 S. W. Rep., 559; Anglin v. State, 52 Texas Crim. Rep., 475; Kirk v. State, 35 Texas Crim. Rep., 224. What is said and quoted above in the Butler case is peculiarly and specially applicable to the facts and law of this case.

The motion is overruled. *Overruled.*