## R. N. BURRUS v. THE STATE.

### No. 3385. Decided January 20, 1915.

**1.—Theft from the Person—Indictment—Description—Money.**

Where, upon trial of theft from the person, the indictment followed approved precedent, and described the stolen property as twenty dollars lawful money of the United States, the same was sufficient. Following Green v. State, 28 Texas Crim. App., 493, and other cases.

**2.—Theft from Person—Charge of Court.**

Where, upon trial of theft from the person, the court instructed the jury that they must believe beyond a reasonable doubt that the defendant intended to appropriate the money to his own use and benefit before they could convict him, the contention that the charge failed to do so was untenable.

**3.—Same—Charge of Court—Requested Charges.**

Where the record failed to show that the requested charges were presented to the court before the court read his charge to the jury, they could not be reviewed on appeal. Following Ross v. State, 170 S. W. Rep., 305; besides, the bill of exceptions did not point out any reversible error in the court's refusal to give the charges. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases. Moreover, the same were embraced in the court's main charge.

**4.—Same—Evidence—Rebuttal—Strangers.**

Where, upon trial of theft from the person, the court refused to permit the defendant to testify that he and the party injured were members of the same lodge, the State's testimony showing they were strangers, the same was reversible error. Prendergast, Presiding Judge, dissenting.

**5.—Same—Indeterminate Sentence Law.**

If upon another trial, the verdict is the same, the judgment should be entered in accordance with the indeterminate sentence law.

Appeal from the District Court of Wichita. Tried below before the Hon. Edgar Scurry.

Appeal from a conviction of theft from the person; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Nicholson & Davenport,* for appellant.—On question of refusal of admitting testimony that parties were members of the same lodge: Villareal v. State, 26 Texas, 108.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of the theft of money from the person of T. P. Berry and his punishment assessed at three years in the penitentiary.

The indictment is in accordance with the statute and the form for such indictment under the statute laid down by Judge White in his Annotated P. C., sec. 1531, and is sufficient and valid. The money stolen is described as "twenty dollars of lawful money of the United States." This was a sufficient description of the stolen money as prescribed by our statutes, and so held by many decisions of this court. Article 468, C. C. P.; Green v. State, 28 Texas Crim. App., 493; Taylor v. State, 29 Texas Crim. App., 466; Wofford v. State, 29 Texas Crim. App., 536; also Sims v. State, 64 Texas Crim. Rep., 435, and Ferrell v. State, 68 Texas Crim. Rep., 487, 152 S. W. Rep., 901, and the cases cited and reviewed in those decisions; also see the case of George McAdams v. State, from Milam County, this day decided.

Some of the facts were established without controversy. The testimony of the witnesses on some of the other issues is conflicting. We will give substantially the material testimony.

Appellant and Berry were strangers in Wichita Falls, where this offense is alleged to have been committed. They met for the first time in the evening of May 18, 1914, in a saloon. Berry was very drunk. The bar-keeper, upon Berry's request, handed him $20, two $10 bills. Appellant saw this.

Berry testified that he first met appellant in the saloon in the evening of May 18, 1914; that he was then drunk; that he didn't remember how long he and appellant were together that evening before they were arrested; that he had $20 in two $10 bills; that he had it in a note or pocketbook, which he exhibited, and identified on the trial. He didn't remember how much other money he had that evening. "I had never seen Burrus until that day. I don't know why I took up with him unless it was that I was pretty drunk. Burrus had been with me, following me around that evening before he took my money from me." On cross-

examination he testified: "I had never seen Burrus before that day. I was too drunk to take care of myself. I remember getting the money at a saloon where I had left it and putting it in a notebook. . . . I don't know whether or not Burrus tried to get my money, as I said I was so drunk that I don't remember." Re-examined by the State, he testified that the first time he saw Burrus was on the date specified, and said: "I did not know him then and I don't know him now, except that I saw him at the examining trial and seen him when he was out on bond the other day. I don't know anything about him at all. I did not tell Burrus that he could get my money. I did not give Burrus consent to get my money. I have never seen Burrus before the day I was robbed."

J. W. Rawls, a policeman at the time in Wichita Falls, testified that he saw appellant on the date the alleged theft took place. "When I saw him he was with this man Berry down on Ohio Street in the City of Wichita Falls, Texas. Berry was pretty drunk and I went to him and told him that he would have to get off the streets or I would have to throw him in jail, and Burrus, who was with him, told me that he would take care of him, and so I let him go and watched them, and they finally went into the Chile King Restaurant. Someone told me that I had better watch Burrus as he was fixing to take Berry's money from him. I had on my uniform and knew that I could not watch him, as he would know who I was, and I saw Bob Lyons, another policeman, who was dressed in plain clothes, so I told him to watch them and I went on about my business. It was only a short time until they came out of the restaurant and went into the Princess bar, which is about fifteen feet from the restaurant." On cross-examination he said: "I don't think that the defendant was drinking: If he was I could not tell it on him at all."

Said policeman, Bob Lyons, testified that he was near the front of said restaurant on said occasion when Rawls told him to watch appellant and Berry; that he was dressed in plain clothes and did not have on any uniform; that appellant and Berry went into the restaurant, sat down on two stools and he went in and sat near them. That he ordered a piece of pie and a glass of milk and was listening to their conversation; that Burrus was trying to borrow $10 from Berry, but Berry told him he did not have any money to loan; that Berry was pretty drunk; that if Burrus was drinking he could not tell it on him at all; that they got up and went out of the restaurant and he followed them into the Princess bar; that finally they walked kinder towards the back of the saloon and he followed them; they were talking all the time; he could not understand what they were saying. He said: "I got in behind the screen lattice which was in the back of the saloon, and I could see them but they could not see me. I was watching them all the time, and finally Burrus reached in the hip pocket of Berry's pants and got the long notebook out and started to put it in his, Burrus', pocket, but just as he started to put it in his pocket, I grabbed him and took the pocketbook away from him. He said for me to be damn sure that there was

twenty dollars in there. I told him that I would take care of that and would also take care of him. There was twenty dollars in there. I arrested both Burrus and Berry and took them to the City Hall." That he turned over said money to the chief of police. On cross-examination he said he was sitting close to Burrus and Berry in the restaurant and could hear what they were talking about. That Burrus was trying to borrow $10 from Berry and Berry would not let him have it; that he never heard Berry offer to let Burrus have any money.

J. B. Nail, the chief of police in Wichita Falls, testified that on May 18, 1914, Bob Lyons turned over two $10 bills to him; that he put them in the bank and they had been there ever since. He produced the two bills and identified them. He said they were United States money and of the value of $20.

Appellant, for himself, testified that the policeman Bob Lyons arrested him in the King Restaurant and not in the Princess saloon; that he was a stranger in Wichita Falls and met Berry the evening of May 18, 1914; that he went into a saloon, where he first met Berry, hunting for a man whom he had met the day before to get him to clean a suit of clothes for him; that he didn't find him in there and started out; that the bar was lined up with a bunch and just as he got to the head of the bar, Berry asked him to have a drink; he at first declined, but upon Berry insisting he did take a toddy with him;. while he was drinking, the most of the bunch left; that Berry told the bar-keeper to let him have his money that he had left there; the bar-keeper put two $10 bills out on the bar and Berry started to put it in his long note or pocketbook; the bar-keeper told him that he would lose his money; that he, appellant, had a small pocketbook and he took it out and gave it to Berry to put the money in and then put that in his, Berry's, large notebook; that Berry asked him to stay with him and look after him as he was pretty drunk, and he told him all right; that he tried to get him to go up in his room and go to bed, but Berry declined and wanted to take another drink. That they left the saloon, walked out on the streets and sat down and talked a while when the policeman Rawls saw them and came to them and told them, as Rawls swore he did. He claimed that when they went to a saloon to take another drink Berry wanted to find a toilet and did go back to the toilet, but left his money with him while he was in the toilet; that he got the money back from him when he came back from the toilet; that they then went out of that saloon into the restaurant; that Berry wanted something to eat and he didn't, but upon Berry insisting he did order some fish and they sat there and ate it. He then claims that after they got through eating they went kinder back in the restaurant when Berry began again about having lost his money; that he told him that he had not lost his money, but it was in the front of his shirt bosom, and he began to look for and couldn't find it. "I reached my hand in there and pulled the money nearly out of his shirt and said, 'Here is your money.' Just about this time, someone reached over my shoulder and grabbed my hand that I had the pocketbook in, and before I got it out of the shirt front of the man Berry.

I asked him what he meant and told him to be damn sure that all of that money was in the pocketbook and he said that was all right, he would take care of the pocketbook and me also." He at first swore that this occurred in the back end of the restaurant and not in the saloon. He afterwards changed his testimony and said that it was in the back end of the saloon and not in the restaurant. He swore that he did not take the pocketbook and money out of Berry's hip pocket, nor did he start to do so. The State's witness Lyon swore positively that he did take it out of Berry's hip pocket and did not attempt to take it out of Berry's shirt in front. This was one of the controverted issues in the testimony. Appellant denied trying to borrow any money from Berry while they were eating in the restaurant, but said that Berry told him if he wanted any money he would let him have it as he had plenty. He claimed that he was with Berry on that occasion three or four hours and had ample opportunity to have taken his money if he had wanted to and that he did not intend to take and keep the money, but simply, as Berry claimed that he had lost it, to show it to him and show him that he had not lost it.

The record shows that appellant made but one objection to the court's charge and that is he claimed that the charge failed to affirmatively tell the jury that they must believe beyond a reasonable doubt that he *intended* to appropriate the money to his own use and benefit before they could convict him. If the court, in his charge as submitted to appellant's attorney, at first omitted this, it was clearly supplied in the charge in the record, in response to his objection.

There is in the record five special charges, shown to have been pre-.pared by appellant's attorneys. No reason whatever is' given in either of them why they should have been given, either in the charges themselves or in the motion for new trial, or in his bill complaining of the court's refusal to give them. The record shows that he took one bill of exception thereabout to the effect, that on the trial, after the evidence had been concluded, he presented "to the court his special requested instructions Nos. 1, 2, 3, 4 and 5, and requested the court to give them in charge to the jury, which said special instructions are as follows, towit:" Then he simply copied each of said claimed five special charges. His bill concludes with this: "Which request on the part of defendant the court refused and did not give said special instructions or any one of same in charge to the jury, to which action and ruling of the court the defendant then and there in open court excepted, and here now tenders this his bill of exception and asks that the same be approved, signed, filed and constitute a part of the record in this case, which is accordingly done," which bill is signed by the judge. The trial seems to have been concluded on August 7, 1914. This bill was not presented, allowed and filed until August 29th. ·

From the record it is very questionable whether it is sufficiently shown, if at all, that these charges were presented to and requested of the court before the court read his charge to the jury. In other words, that they were presented as required by the recent Act of the Legislature on the

subject. '(Ross v. State, 170 S. W. Rep., 305.) If they were presented within that time, as the bill is in the record, it is not so presented as to show any reversible error in the court's refusal to give the charges. Ryan v. State, 64 Texas Crim. Rep., 628; Berg v. State, 64 Texas Crim. Rep., 612. However, conceding that said special charges were presented within the proper time and the questions raised in such a way as to require consideration thereof, we have examined each of them, and in our opinion they were fully and completely embraced in the court's charge so that in no event was it necessary to give any or either of them, and the court did not err in refusing to give either of them. However, as the case is to be reversed by my associates, we think the court in another trial should submit affirmatively appellant's special defense, to the effect that if he did not take Berry's money with the intention of appropriating it, but merely pulled it out of his shirt to show to him he had not lost it, then to acquit him.

By the only other bill of exception appellant complains that the court erred in refusing to let appellant swear that he and Berry were members of the Odd Fellows Lodge. In the opinion of this writer said evidence was inadmissible. But even if it was admissible, the exclusion of it, under the circumstances of this case, should not require a reversal. But my brethren are of opinion the evidence was admissible, and on their opinion the case will be reversed and remanded, to which I dissent.

The verdict of the jury assessed three years in the penitentiary. The sentence of the court does not comply with our indeterminate sentence law. We call attention to this, so that if necessary on another trial the proper sentence, as required by the indeterminate sentence law, should be entered.

Reversed and remanded.

*Reversed and remanded.*